## EL RENO WHOLESALE GROCERY CO. v. TAYLOR, Co. Treas.

No. 12093—Opinion Filed March 28, 1922.

Rehearing Denied Sept. 26, 1922.

(Syllabus.)

**1. Courts—Supreme Court Jurisdiction—Original Jurisdiction to Enjoin Illegal State Taxes—Validity of Statute.**

Section 2, article 7, of the Constitution, vests this court with exclusive appellate jurisdiction in civil cases, both at law and in equity; it also vests this court with original jurisdiction in certain matters and further provides: "And the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law." Chapter 25, Session Laws 1921, confers original jurisdiction upon this court in actions to enjoin the collection of illegal taxes for state purposes. Held, that, in so vesting this court with original jurisdiction in said matters, the Legislature did no more than confer such other and further jurisdiction as is authorized to be conferred by said section 2, article 7 of the Constitution, and is a valid exercise of legislative power.

**2. Same—Power of Legislature to Increase Original Jurisdiction—Limitations.**

The Legislature is not unlimited in its power to confer original jurisdiction upon this court. The primary purpose of the Constitution being to create an appellate court, a court of final resort, the Legislature could not so burden it with original jurisdiction as to destroy its primary function as an appellate court.

**3. Same.**

In matters of general public interest, matters which directly affect the sovereign rights and powers of the state, the Legislature has power, under section 2, article 7, to confer original jurisdiction upon this court.

**4. Taxation—Illegality of State Levy—Injunction.**

In an action brought in this court under said chapter 25, Session Laws 1921, and

under section 7 of said act, if this court should find a state levy to be wholly illegal it may enjoin the collection of the entire levy.

**5. Same—Statute—Construction.**

Under section 8 of said chapter 25, Session Laws 1921, the remedy provided in the act is not exclusive, but merely cumulative, and is not extended to levies made by any county or municipality, but is extended only to persons affected by an illegal levy of a state tax, and only a state tax.

**6. Same—Parties Plaintiff.**

Under section 6 of said act the action provided for may be brought by any person affected by the unlawful levy of a state tax.

**7. Same—Nature of Remedy.**

The remedy provided for in said chapter 25, Session Laws 1921, is not a suit in equity, as was understood by the term "suit in equity" under the common law, but is a legal remedy specifically prescribed by statute.

**8. Same.**

While the remedy provided for in said act is denominated an action, and is an action in the broader sense of the term in that it is a proceeding for the prevention of a wrong, yet it is not an action within the meaning of the term "action," as defined in section 4646 to 4647, inclusive, Revised Laws 1910, but is a special proceeding as defined by section 4645.

**9. Taxation—Duties of State Board of Equalization—Constitution.**

Section 21, article 10, of the Constitution, created the State Board of Equalization and prescribed certain duties, but provided: "And it shall perform such other duties as may be conferred by law."

**10. Same—Statutes.**

Under section 7374, Revised Laws 1910, the Board of Equalization is charged with the duty of ascertaining the total value of all property in the state and with computing the amount appropriated to pay expenses of government for each fiscal year, with 20 per cent. added thereto as an allowance for delinquent taxes, and from such sum deducting the estimated income from all sources other than from ad valorem taxes. and of computing the rate of levy necessary to raise the amount required to be raised for each fiscal year. Held, the duties thus prescribed by said section of statute do not exceed the authority granted under said section 21, article 10, of the Constitution.

**11. Same—Duty of "Levying" Taxes.**

Under said section 7374 of the statutes, the power to levy a tax is not delegated to the Board of Equalization, nor does it impose upon such board the duty to make a levy. The levy is made by the Legislature itself.

**12. Same—Power to Add 20 Per Cent. for Delinquent Taxes.**

The provision in section 7374, Rev. Laws 1910, supra, authorizing the Board of Equalization to add 20 per cent. to the amount estimated to be raised, is authorized only when a levy is necessary to be made, and is not authorized to be made when there are sufficient funds on hand to pay the expenses of state government without making a levy at all. When no levy is made, no authority exists for adding the 20 per cent. for delinquent taxes in such levy.

**13. Same—Estimates of State Needs—Procedure.**

It is the duty of the Board of Equalization, under section 7374, Rev. Laws 1910, supra, in estimating the amount which the state may expect from other sources than the levy about to be made, to add the unexpended cash balance on hand, over and above all outstanding obligations, to the amount estimated to be collected from other sources than the levy about to be made for the ensuing year, and subtract their sum from the total estimated expenses, and then estimate the rate of levy to be made upon the balance.

Original Action from Canadian County.

Action by the El Reno Wholesale Grocery Company against J. Y. Taylor, County Treasurer, to enjoin collection of state tax levy. Injunction granted.

C. O. Blake, Cottingham, Hayes, Green & McInnis, Clifford L. Jackson, E. A. Boyd, Kleinschmidt & Grant, and Herman S. Davis, for plaintiff.

S. P. Freeling, Atty. Gen., and C. W. King, Asst. Atty. Gen., for defendant.

HARRISON, C. J. This is an original action, filed in this court under the provisions of chapter 25, Sess. Laws 1921. to enjoin the collection of the 1.5 mill rate, estimated by the State Board of Equalization to be the rate necessary to meet the expenses of state government for the fiscal year ending June 30, 1921. Two decisive questions are involved in the case, viz.: First, whether this court has original jurisdiction over the controversy; second, whether the levy is valid.

The plaintiff contends that this court has original jurisdiction, and that the levy is invalid. Defendant contends that this court does not have original jurisdiction, and that the levy is valid.

As to the qualification of original jurisdiction, section 1, chapter 25, Sess. Laws 1921, provides:

"The Supreme Court of this state shall have original jurisdiction of actions brought therein to enjoin the enforcement or collection of any illegal tax, charge or assessment made or levied for any state purpose and to enjoin the collection of any such tax, if it shall be found by the court that the same is illegal. Any number of persons against whom any such tax is levied or whose property is affected by any such tax may unite in the petition filed to obtain such injunction and, after any such petition has been filed by any person or persons, other persons similarly situated may, at the discretion of the court, upon permission granted it, join in such petition and become parties plaintiff in such action. Any such action may be brought against any officer or officers of the state or any officer or officers of any county or counties of the state charged with the duty under the statute of enforcing or collecting such tax."

If the foregoing provisions of statute are not in conflict with constitutional provisions, then this court has original jurisdiction.

Section 2, article 7, of the Constitution provides:

"The appellate jurisdiction of the Supreme Court shall be co-extensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs as may be provided by law, and to hear and determine the same; and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law."

From the last provision above it is clear that the Legislature may confer other and further jurisdiction by law. Chapter 25, Sess. Laws 1921, at the most, cannot be said to do more than confer other and further jurisdiction. Therefore, the passage of the act was within the legislative power, and was a valid exercise of such power.

By this we are not to be understood as holding that the Legislature is unlimited in its power to confer original jurisdiction upon this court. The primary purpose of the Constitution in creating this court was to create an appellate court, a court of last resort by appeal, and the Legislature could not so burden it with original juris-

diction as to destroy its primary function as a final court of appeals.

But in matters of such public interest, matters which directly affect the sovereign rights and powers of the state, as does this case, it is within the valid exercise of legislative power to confer original jurisdiction in such matters upon this court; the purpose of the act being to provide a remedy against an invalid state tax.

Section 7 of the act makes this provision:

"* * * Provided, the court shall first determine the validity of the tax levy under which any tax is sought to be restrained, enforced, collected or returned, and if said levy is found illegal the court shall enjoin the collection of said tax under said levy found illegal as to all parties affected, whether they be parties of said suit or not."

Therefore, if the court should hold the levy to be illegal in its entirety, the entire state levy should be enjoined, as this procedure is authorized only as to state taxes and every taxpayer within the state is affected.

Section 8 of the act above provides:

"The remedy herein authorized shall not be exclusive or operate to repeal any statute of this state authorizing any proceeding for the recovery of illegal taxes paid, and shall be cumulative; but shall not extend to any tax or taxes levied by any county or other municipality of the state."

The provision, "but shall not extend to any tax or taxes levied by any county or municipality of the state," precludes an original action in this court to enjoin the collection of any county or municipality tax or any tax except a state tax.

Section 6 of the above act provides:

"An action hereunder may be brought by any person or persons against whom any such tax complained of is levied or whose property is affected thereby at any time after such tax is levied. * * *"

The above provision gives any person affected by the tax the right to bring the action provided for in the act. Hence we hold that the Legislature has not exceeded its constitutional limitations in thus conferring original jurisdiction upon this court; also that, under the above provision of section 7 of the act, if this court, in any case, should determine a levy to be illegal and should enjoin the collection of same, the effect of such order would be to enjoin the collection of the entire state

levy; also, under section 8, that the remedies provided in said act are not exclusive, but merely cumulative, and that this remedy cannot be resorted to except to enjoin the collection of a state levy, also, under section 6, that any person affected by such tax may bring the action provided for.

As to the validity of the levy, one of the grounds urged by plaintiff is that levying a tax is a legislative act, and, assuming that the Board of Equalization had itself made the levy in question, and that it received authority to do so from the Legislature, contends that the delegation of authority to the Board of Equalization to levy a tax is an unconstitutional delegation of legislative authority, and that the tax levied under such authority is void.

It is probably true that the levying of a tax is a legislative act and possibly true that the Legislature cannot delegate such authority to the Board of Equalization. It is unnecessary, however, to decide either of these questions, for the simple reason that the Legislature has not delegated such authority to the Board of Equalization, nor has the Board of Equalization made the levy in question. The Constitution and statutes settle these questions.

Section 21, article 10, of the Constitution provides:

"There shall be a State Board of Equalization, consisting of the Governor, State Auditor, State Treasurer, Secretary of State, Attorney General, State Inspector and Examiner, and President of the Board of Agriculture. The duty of said board shall be to adjust and equalize the valuation of real and personal property of the several counties of the state, and it shall perform such other duties as may be prescribed by law. * * *"

Bearing in mind the provision, **"and shall perform such other duties as may be prescribed by law,"** we look to sections 7374 and 7375 of the Revised Laws of 1910 to see what other duties have been prescribed by law.

Section 7374:

"There is hereby levied annually an ad valorem tax upon all property in this state which may be subject to taxation upon such basis, a tax sufficient in addition to the income from all other sources, to pay the expenses of the state government for each fiscal year ending on the thirtieth day of June, and to pay the deficiency, if any, for the year next preceding; Provided, however, that the total amount of such levy shall not exceed the maximum amount provided by the Constitution that may be levied on an ad valorem basis for state purposes, including one-fourth of one mill for common school purposes to be levied, collected and distributed as other school money. For the purpose of computing the amount of the levy hereby made, the State Board of Equalization shall, at its annual meeting on the third Monday in June of each year, or as soon thereafter as the total valuation of all the property in this state subject to taxation under the provisions of this chapter shall have been ascertained, and from day to day thereafter, until such time as they shall compute the amount appropriated to pay the expenses of the state government for the period aforesaid with twenty per cent. added thereto as an allowance for delinquent taxes. From the actual amount thus computed shall be deducted the estimated income of the state from all sources other than from the levy hereby made. The amount so ascertained shall be certified by the State Auditor to the clerks of the several counties in this state, and shall be entered upon the tax rolls thereof."

Section 7375:

"The amount of the levy so computed by the State Board of Equalization shall specify distinctly the purpose for which tax is levied and shall in no case exceed the amount appropriated by the Legislature for such purpose."

It must be observed that section 7374, supra, does not delegate to the Board of Equalization the authority to make a tax levy, nor impose upon it the duty to make a levy, nor contemplate that it will make a levy, and that the Board of Equalization did not make the levy. The levy is made by the Legislature itself, and is a perpetual annual levy sufficient to defray the state's expenses for each year.

The opening lines of section 7374, supra, read:

"There is hereby levied annually an ad valorem tax upon all property in this state which may be subject to taxation upon such basis, a tax sufficient in addition to the income from all other sources to pay the expenses of state government for each year ending on the thirtieth day of June, and to pay the deficiency, if any, for the year next preceding. * * * "

Therefore, neither the actual making of the levy complained of nor the actual making of any tax levy is performed by the Board of Equalization. The actual making of the levy was by the Legislature itself, and was made pursuant to express provisions of sections 2 and 3, article 10, of the Constitution, which provides:

Section 2:

"The Legislature shall provide by law for an annual tax sufficient, with other resources, to defray the estimated ordinary expenses of the state for each fiscal year."

Section 3:

"Whenever the expenses of any fiscal year shall exceed the income, the Legislature may provide for levying a tax for the ensuing fiscal year, which, with other resources, shall be sufficient to pay the deficiency, as well as the estimated ordinary expenses of the state for the ensuing year."

Thus the Legislature not only acted within its authority, but acted under the express command of the Constitution.

Now, bearing in mind that the levy itself was made by the Legislature by the passage of the act, and not by the Board of Equalization, and bearing in mind, also, that the Legislature is authorized, by section 21, article 10, of the Constitution, to prescribe additional duties for the State Board of Equalization, let us see just what duty has been prescribed for such board by sections 7374 and 7375, Revised Laws 1910, supra, these being the sections which prescribe such additional duties. It will be observed that, after making the levy which is made in said section 7374, supra, and making a perpetual annual levy, the section further provides:

" * * * For the purpose of computing the amount of the levy hereby made, the State Board of Equalization shall, at its annual meeting on the third Monday in June of each year, or as soon thereafter as the total valuation of all property in this state subject to taxation under the provisions of this chapter shall have been ascertained, and from day to day thereafter, until such time as they shall compute the amount appropriated to pay the expenses of the state government for the period aforesaid with twenty per cent. added thereto as an allowance for delinquent taxes. From the actual amount thus computed shall be deducted the estimated income of the state from all sources other than from the levy hereby made. The amount so ascertained shall be certified by the State Auditor to the clerks of the several counties in this state and shall be entered upon the tax rolls thereof."

As a limitation upon the rate estimated, as above provided, section 7375 provides:

"The amount of the levy so computed by the State Board of Equalization shall specify distinctly the purpose for which tax is levied and shall in no case exceed the amount appropriated by the Legislature for such purpose."

The only duties prescribed for the Board of Equalization by the above statutes, the only powers conferred upon such board by said statute, are merely administrative and clerical duties. They are not legislative in any sense of the term, and are therefore not an invalid delegation of legislative authority. The board has merely the duty to ascertain by mathematical calculation the total valuation of all property in the state; the total amount appropriated by the Legislature for the expenses of state government for the period; to add 20 per cent. to such amount as an allowance for delinquent taxes. This gives the board the gross amount of revenue to be raised. It then becomes the duty of the board to make an estimate of the amount expected to be collected from unpaid taxes, and also to estimate the amount expected to be derived from all other sources than the rate which is about to be estimated or computed, and if there be a surplus balance in the treasury, over and above all legal requirements for the preceding year, to add such unexpended balance to the amount expected to be derived from all other sources and subtract their sum from the aforesaid gross amount to be raised, and upon the remainder to estimate the rate of levy to be made upon the total amount of assessed valuation within the state. When this is done and the estimates are certified, as provided by the above statutes, the duties of the Board of Equalization, as such, are ended so far as a particular levy is concerned.

A performance of the duties thus prescribed does not contravene the provisions of the Constitution nor transcend any constitutional limitations. The Legislature had power to confer such duties. It might have reserved to itself the duty of making the mathematical calculations and estimates necessary to be made, but, recognizing the impracticability and expensiveness of such a plan and taking cognizance of the fact that it is already the duty of the Board of Equalization, under the Constitution, to equalize the assessments of all counties, and that the board would thereby have a better knowledge of the total amount of assessable property in the state and a better opportunity for estimating the total amount of assessable property in the state than some other board might have or that the Legislature itself might have, and taking these things into consideration, the Legislature, instead of reserving to itself the duty of making the computations or providing for some other board to make them, as it had authority

to do, very properly designated the Board of Equalization as the board which should be charged with the duty of estimating the amount of revenue to be raised and of computing the rate of levy, and in so doing the Legislature acted within its constitutional authority.

It is contended by defendant that this is an equitable proceeding and that plaintiff has an adequate remedy at law, and, therefore, cannot maintain this proceeding for relief. But this is not a suit in equity within the meaning of the term "suit in equity" under the common law. It is true that injunction is a character of relief which formerly was granted only by courts of equity, and, ordinarily, even under the Code, a proceeding for injunction is one which invokes the equity power of the court and is governed in the main by the principles of equity, but this proceeding is not an equity proceeding; it is a legal proceeding for a relief provided for by statute, both the procedure and the remedy being expressly provided for by statute.

Section 1 of the act under which it was brought denominates it "an action," and while it is an action in the broader sense of the term "action," in that it is a proceeding for the prevention of a wrong, yet it is not an action within the meaning of the term "action" as defined by section 4644, Revised Laws of 1910, in that it is unlike the ordinary proceeding in courts of justice. Sections 4643 to 4648, inclusive, Revised Laws of 1910, are as follows:

Section 4643:

"Division of Remedies. Remedies in the courts of justice are divided into:

"First: Actions.

"Second. Special proceedings."

Section 4644:

"Action Defined. An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

Section 4645:

"Special Proceedings. Every other remedy is a special proceeding."

Section 4646:

"Kinds of Action. Actions are of two kinds: First, civil; second, criminal."

Section 4647:

"Criminal Action. A criminal action is one prosecuted by the state as a party,

against a person charged with a public offense for the punishment thereof."

Section 4648:

"Civil Action. Every other is a civil action."

Therefore, while this proceeding is not an "action" within the restricted meaning of the above statutes, yet, being a proceeding authorized and prescribed by statute for the prevention of an alleged wrong, it comes within the meaning of the definition of "special proceeding," and is not a "suit in equity," but a "special proceeding." For discussion and decisions on the distinction between "actions" and "special proceedings," within the meaning of statutes which make such distinction, see Cornish v. Milwaukee, etc. (Wis.) 19 N. W. 443; In re Milwaukee Light, Heat & Traction Co. (Wis.) 125 N. W. 903-4; "Action," 1 R. C. L. 315; "Actions," 1 Cyc. 716-17; "Action," 1 C. J. 951-2; also authorities cited under subject "Special Proceedings," 7 Words & Phrases, 6587.

Hence, in our opinion, inasmuch as the remedy prescribed by the statute under which this proceeding was brought is a legal remedy and is extended to any person affected by the tax, the plaintiff, having shown himself affected by the tax has a right to maintain this proceeding in the manner in which it was instituted.

Plaintiff contends also that the levy is invalid for the reason that the Board of Equalization, in making its estimates and computations, "acted in a systematic, arbitrary, grossly excessive, discriminatory and unfair manner, and in systematic and intentional disregard of the laws of said state."

In support of the above allegation plaintiff alleges certain facts as to the amount required by the state for the fiscal year ending June 30, 1921, the amount on hand as an unexpended balance in the state treasury; the amount which should reasonably be expected from other sources than the ad valorem levy in question, and the amount estimated for deficiency expenses. Plaintiff contends that the Board of Equalization had no power to make a levy for estimated deficiencies, and that it acted without authority of law and contrary to law by including such deficiency in its estimate for the ensuing year's expenses, and, upon such allegation of facts, plaintiff contends that the amount on hand, together with the amount which should reasonably be expected from other sources than the ad val-

orem levy in question, would be more than the amount appropriated by the Legislature for the ensuing year and sufficient in amount to meet all expenses for such year without making any levy at all; that, therefore, the entire levy was unnecessary, and, such being the case, the Board of Equalization was without authority to make any levy.

Upon the issues of fact as to the amount of unexpended balance in the treasury, the amount which should reasonably be expected from other sources, and the total amount appropriated by the Legislature for the year in question, the plaintiff and defendant, through the Attorney General, have stipulated and agreed that the following are the facts in the case, to wit:

"Agreed Statement of Facts.

"Comes now the parties hereto and agree that the above entitled cause shall be submitted to this court for final determination upon the following agreed statement of facts:

"1. It is agreed that paragraph 1, 2, and 3 of plaintiff's petition filed herein, as amended, are correct statements of the facts therein set forth.

"2. It is further agreed that the said defendant, J. Y. Taylor, as county treasurer of Canadian county, Okla., has extended the said state levy of 1.5 mills on the tax rolls of Canadian county, and has charged and assessed against the property of the plaintiff in said county taxes on account thereof in the amount of two hundred and five and 76/100 dollars ($205.76), which said amount the defendant is demanding that the plaintiff pay.

"3. It is further agreed that for the fiscal year ending June 30, 1920, the actual receipts of the state of Oklahoma from sources other than ad valorem taxation was $6,225,682.80.

"That for the fiscal year ending June 30, 1921, the State Board of Equalization estimated that such income from other sources would amount to $5,405,000.00.

"That at the time said state board made such estimate on September 13, 1920, there had been collected and received for the two preceding months, July and August, 1920, or for one-sixth of the current fiscal year, from sources other than ad valorem taxation, the sum of $1,982,217.06.

"That for the twelve months constituting the fiscal year ending June 30, 1921, there was actually collected and received by said state from sources other than ad valorem taxation, the sum of $8,436,349.25.

"4. It is further agreed that on June 30, 1920, there was in process of collection by said state, ad valorem taxes for the preced-ing year amounting to $1,809,043.58, none of which amount was included in the estimate of income for the fiscal year ending June 30, 1921, as adopted by the State Board of Equalization; that there was actually collected and received during said year on account of said delinquent ad valorem taxes the sum of $1,620,052.44.

"5. It is further stipulated and agreed that the statement hereto attached marked Exhibit '1' correctly shows for each state department, and by totals the following:

"In column 1, the earnings of the state of Oklahoma accruing to the general revenue fund, from sources other than ad valorem taxes, for the fiscal year ending June 30, 1920.

"In column 2, the estimated earnings from the same sources for the fiscal year ending June 30, 1921, as computed by the State Auditor and submitted to the State Board of Equalization.

"In column 3, the estimated earnings from the same sources for said fiscal year, as computed by the State Examiner and Inspector, and submitted to the State Board of Equalization.

"In column 4, the estimated earnings from the same sources for the said fiscal year, as computed by the Governor, submitted and adopted by the State Board of Equalization.

"In column 5, the earnings from the same sources collected for the months of July and August, 1920.

"In column 6, the actual earnings from the same sources collected during the fiscal year ending June 30, 1921, and credited to the general revenue fund for the year 1921.

"6. It is further stipulated and agreed that the statement hereto attached and marked Exhibit '2,' and made a part hereof, correctly shows the financial condition of the state of Oklahoma, as of June 30, 1920.

"7. It is further stipulated and agreed that the statement hereto attached marked Exhibit '3' and made a part hereof, correctly shows the financial condition of the state of Oklahoma, as of June 30, 1921.

"8. It is further stipulated and agreed that Exhibit 'A' attached to petition of plaintiff herein is a correct copy of the resolution adopted by the State Board of Equalization on September 13, 1920; and that the sum of $1,721,401.44, shown therein as estimated accruing deficiencies, was included by the state board in the revenue requirements for the fiscal year ending June 30, 1921, and that no part of said sum had theretofore been appropriated by the Legislature of said state.

"(Signed) C. O. Blake, Cottingham, Hayes, Green & McInnis, Kleinschmidt & Grant, M. D. Green, Attorneys for Plaintiff.

"S. P. Freeling, Attorney General, C. W. King, Assistant Attorney General, Attorneys for Defendant.

"Statement showing the earnings (column 1) of the state accruing to General Revenue, from sources other than ad valorem taxes, for the fiscal year ending June 30, 1920; the estimated earnings (column 2) from same sources for fiscal year ending June 30, 1921, as computed by F. C. Carter, State Auditor; the estimated earnings (column 3) from same sources for said fiscal year as computed by Fred Parkinson, State Examiner and Inspector; and the estimated earnings (column 4) from same sources for said fiscal year as computed by J. B. A. Robertson, Governor, Column 5 shows the amounts collected by the various named departments and institutions for the months of July and August, 1920. Column 6 shows actual earnings collected during the fiscal year ending June 30, 1921, and credited to the General Revenue Fund for 1921.

| Departments and Institutions | Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 |
|---|---|---|---|---|---|---|
| Secretary of State | 331,312.02 | 250,000.00 | 100,000.00 | 200,000.00 | 44,192.18 | 236,896.13 |
| State Auditor—Gross Production Tax | 3,353,104.53 | 4,000,000.00 | 3,550,000.00 | 3,354,000.00 | 1,307,082.32 | 5,239,297.26 |
| Income Tax | 816,212.19 | 750,000.00 | 800,000.00 | 675,000.00 | 229,842.57 | 916,064.25 |
| Miscellaneous Collections | 58,941.42 | 50,000.00 | 50,000.00 | 50,000.00 | 9,611.40 | 63,881.91 |
| Inheritance Tax | 100,554.45 | 125,000.00 | 125,000.00 | 50,000.00 | 63,090.62 | 155,067.82 |
| State Treasurer—Interest On Daily Balances | 157,470.99 | 150,000.00 | 155,000.00 | 125,000.00 | 37,385.24 | 238,494.22 |
| Corporation License Tax | 230,047.31 | 200,000.00 | 350,000.00 | 150,000.00 | 171,062.95 | 312,953.84 |
| Miscellaneous | 600.00 | | | 500.00 | | 816.32 |
| Official Depository Interest | 77,282.13 | 60,000.00 | 75,000.00 | 50,000.00 | 15,843.26 | 85,240.78 |
| Insane Support Collections | 148.50 | | | | | |
| Examiner and Inspector, Accountancy Fees | 950.00 | 750.00 | 500.00 | 500.00 | | 575.00 |
| Chief Mining Inspector | 2,543.77 | 1,000.00 | 2,000.00 | 1,000.00 | | |
| Insurance Commissioner | 541,768.82 | 500,000.00 | 550,000.00 | 350,000.00 | | 682,471.06 |
| Insurance Board | 50,659.11 | 50,000.00 | 50,000.00 | 40,000.00 | 20,807.62 | 91,498.94 |
| Bank Commissioner | 26,831.09 | 25,000.00 | 25,000.00 | 20,000.00 | 3,587.55 | 26,379.95 |
| Corporation Commission | 55,432.73 | 50,000.00 | 50,000.00 | 20,000.00 | 2,883.96 | 21,552.41 |
| Commissioners of the Land Office | 47,663.75 | 45,000.00 | 65,000.00 | 20,000.00 | 47,065.25 | 72,242.92 |
| State Board of Health | 12,427.37 | 12,500.00 | 10,000.00 | 7,500.00 | 3,745.00 | 12,920.56 |
| State Library | 1,115.30 | 1,000.00 | 750.00 | 250.00 | | 111.62 |
| State Mining Board | 1,707.69 | 1,500.00 | 1,000.00 | 750.00 | 180.00 | 958.00 |
| State Board of Public Affairs | 11,357.28 | 12,500.00 | 10,000.00 | 20,000.00 | | 6,376.65 |
| Clerk of Supreme Court | 31,637.52 | 30,000.00 | 25,000.00 | 25,000.00 | 6,195.62 | 32,962.83 |
| Normal. Schools | 1,259.28 | 1,250.00 | 2,000.00 | 500.00 | 1,182.00 | 3,221.33 |
| State Board of Agriculture | 40,351.03 | 40,000.00 | 24,438.80 | 40,000.00 | 5,529.15 | 32,213.23 |
| State Highway Department | 265,368.99 | 250,000.00 | 250,000.00 | 200,000.00 | 12,980.37 | 199,215.94 |
| State Issues Commission | | 12,500.00 | | | | |
| Miscellaneous Departments and Institutions | 8,935.53 | 7,500.00 | | 5,000.00 | | 31,936.28 |
| TOTALS | 6,225,682.80 | 6,625,500.00 | 6,270,688.80 | 5,405,000.00 | 1,982,217.06 | 8,463,349.25 |

Exhibit "2."

Financial Condition of the State of Oklahoma, June 30, 1920.

Surplus over requirements, year ending
June 30, 1919 ----------$ 979,741.11
Ad valorem taxes----------- 3,184,302.65
Earnings from other sources_ 6,225,682.80

Total collections------------    $10,389,726.56
Appropriations for fiscal year ending June
30, 1920---------------- 7,295,492.21
Bond accruals-------------- 307,500.00
Deficiency for 1919-------- 112,093.31
Appropriations 1920
Legislature ----------- 491,640.19
Appropriations 1920
Legislature ------------ 4,229.30

             8,210,955.01
Deduct 1919 appropriation transferred
to 1921 requirements----- 36,000.00

Total requirements----------    $8,174,955.01
Surplus over requirements,
June 30, 1920-----------     $2,214,771.55

Exhibit "3."

Financial Condition of the State of Oklahoma On June, 30, 1921.

Surplus, collections over total require-
ments fiscal year ending June 30,
1920 -------------------$2,214,771.55
Ad valorem taxes for 1919, collected dur-
ing fiscal year ending June 30,
1921 -------------------- 1,620,052.44
Collections, other than ad valorem
taxes for fiscal year June 30,
1921 -------------------- 8,463,349.25

Total collections------------    $12,298,173.24
Appropriations made by Seventh (1919)
Legislature for fiscal year ending
June 30, 1921----------------$6,528,036.64
Bond accruals for fiscal year ending
June 30, 1921----------- 307,500.00
Deficiency certificates issued by Gov-
ernor Robertson since adjournment
of 1920 Legislature to June 30,
1920 -------------------- 199,268.24

Total requirements general revenue for
fiscal year ending June 30,
1921 -------------------    7,034,804.88

            $5,263,368.36
Emergency appropriations, Eighth Legis-
lature, (1921) ----------     3,006,665.05

Net cash balance over all legal re-
quirements at end of fiscal year
June 30, 1921 (not including any
proceeds of 1.5 mill levy------------$2,256,703.31
Amount of ad valorem taxes resulting
from 1.5 mill levy collected-------- 1,256,555.53

Total cash balance June 30, 1921, over
all requirements, including 1.5 mill
levy collections---------------------$3,513,258.84

It being agreed that the foregoing are the actual facts in the case, the court is controlled by such facts in its determination and application of the law.

In determining whether the levy in question is wholly invalid and whether any particular items in the foregoing estimate are of such character as the board has no au-

thority to include, and whether such items, if any, are unlawfully included and therefore invalid, we must look to the constitutional and statutory provisions which govern such matters. It is agreed in the eighth paragraph of the foregoing agreed statement of facts that the sum of $1,721,401.44 was estimated as and for accruing deficiencies and said sum included by the Board of Equalization in its estimate of the revenue required for the fiscal year ending June 30, 1921; and further agreed that no part of said sum had theretofore been appropriated by the Legislature.

It appears that this item of $1,721,401.44 was intended to meet deficiencies which the board estimated would result from the then growing increase in costs of state supplies, traveling and other necessary expenses, salaries of clerks, employes, etc., and that the board made an estimate of what it thought the approximate amount of such increase in costs would be and fixed the above sum ($1,721,401.44) as an amount sufficient to meet such increase and computed a rate sufficient to cover same.

The law does not authorize the board to include such items in its estimate of needed revenue, nor authorize a rate to be computed so as to cover such an estimate.

Section 55, article 5, of the Constitution provides:

"No money shall ever be paid out of the treasury of this state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payment be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

Section 23, article 10, of the Constitution provides:

"The state may, to meet casual deficits or failure in revenues, or for expenses not provided for, contract debts; but such debts, direct and contingent, singly or in the aggregate, shall not, at any time, exceed four hundred thousand dollars, and the moneys arising from the loans creating such debts shall be applied to the purposes for which they were obtained or to repay the debts so contracted, and to no other purpose whatever."

Section 7375, Revised Laws of 1910, provides:

"The amount of the levy so computed by the State Board of Equalization shall specify distinctly the purpose for which tax is levied and shall in no case exceed the

amount appropriated by the Legislature for such purpose."

Now, bearing in mind the provisions in section 55, article 5, supra, of the Constitution, that no money shall ever be paid out of the treasury of this state except in pursuance of an appropriation by law, and the further provision in said section that every law making an appropriation shall distinctly specify the sum appropriated and the object to which it is to be applied, and keeping these provisions in mind in connection with the provision in section 7375, Rev. Laws 1910, that **"The amount of the levy so computed by the State Board of Equalization shall specify distinctly the purpose for which tax is levied and shall in no case exceed the amount appropriated by the Legislature for such purpose,"** we must conclude that the Board of Equalization had no authority to include the item of $1,721,401.44, agreed to in paragraph eight of the stipulation, as the amount estimated for deficiency expenses and for which it is agreed that no appropriation was made by the Legislature.

Under the foregoing provisions of the constitution and statutes, we see no room for controversy as to the powers of the Board of Equalization in such matters; and as to the limitations placed upon its authority in this regard, we cannot see how language could make it plainer than, **"that no money shall be paid out of the state treasury except upon an appropriation,"** and that the Board of Equalization, in making its estimate of the rate, **shall in no case exceed the amount appropriated by the Legislature.** As to the wisdom of these limitations it is unnecessary to discuss. The conditions presented in the present case would seem to explain their wisdom, and it may suffice that such are the plain provisions of both the Constitution and the statutes.

There is but one thought conveyed by these provisions, to wit, **that no money shall be paid out of the state treasury except by an appropriation and that the rate estimated by the board shall in no case exceed the amount appropriated.** Hence, the levy in question is invalid as to said item of $1,721,401.44, estimated as a possible deficiency, for the reason the board had no power to include it.

In deciding whether the levy was valid in all other respects, the court should be governed by the question, whether the board had power, under the law, to do the things which it did, rather than by the question of actual necessity.

It is contended further by plaintiff that no levy at all was necessary; that the cash balance on hand, at the time the estimate was made, plus the lowest estimated sum which might reasonably be expected from other sources than from the tax about to be levied, was sufficient to meet all expenses and every valid requirement without making any levy at all, and, therefore, the board had no authority to add the item of 20 per cent. of the estimated expenses for the ensuing year as an allowance for delinquency in the payment of the taxes about to be levied; that the cash on hand over and above all legal requirements and outstanding claims, plus the amount expected from other sources than the levy about to be made, being sufficient to meet all legal requirements, the 20 per cent. item added to the total expenses as an allowance for delinquent taxes was purely arbitrary and fictitious; that no levy being necessary, there would be no delinquent taxes, if no levy was made and there being no delinquent taxes there was no authority or reason for adding the 20 per cent. item as an allowance for delinquent taxes and that such 20 per cent. item was therefore arbitrary and void.

The basis of this contention is the fact that at the end of the fiscal year 1920 and at the beginning of the fiscal year 1921, there was an unexpended cash balance over and above all legal requirements in the general fund amounting to $2,214,771.55, and that the lowest estimate made as to what might reasonably be expected from other sources than from the levy in question, the lowest estimated earnings or collections expected from other sources during the ensuing year, was $5,405,000.

It appears from the pleadings and from the stipulation of facts, set out above, that three estimates were made, one by the Governor, one by the State Auditor, and one by the State Examiner and Inspector; that the Governor's estimate of what might be expected to be derived from other sources was the lowest of the three, and it is contended that taking this lowest estimate, $5,405,000, and that sum, adding the cash balance on hands, made the sum of $7,619,771.55, which sum, according to the board's own estimate, was $584,966.62 more than was necessary to meet all the legitimately estimated expenses without making any levy at all; that the legitimately estimated expenses and the amount appropriated by the Legislature amounted to $7,034,804, that the amount of cash balance on hand plus the lowest estimate of the amount expected to be collected from other sources than the levy about to

be made, amounted to $584,966.62 more than was necessary to meet all the estimated expenses without making any levy at all. In other words, it is contended that had no levy at all been made and no 20 per cent. item been added, the state, with the amount on hand plus the amount collected during the ensuing year, would have paid all legitimately estimated expenses and had $584,-966.62 left unexpended, and this contention is based upon the estimate which the board made upon the showing June 30, 1920. The stipulated facts show in Exhibit 3, supra, that the state in fact did have at the close of the fiscal year 1921, over and above all estimated expenses, the sum of $2,256,703.31, without including any revenue collected from the 1.5 mill levy involved herein. In other words, the cash balance on hand at the beginning of the fiscal year 1921, plus the amount collected during the year, was sufficient to meet, and did meet, all legitimately estimated expenses and appropriations and left an unexpended cash balance of $2,256,703.31.

Now, in consideration of the fact that under the board's lowest estimate, the cash on hand, plus the amount estimated as the amount expected to be collected during the ensuing year, they would have had over $584,000 without making any levy at all, and this fact, taken in connection with the actual facts stipulated herein and shown by the public records, to wit: That the amount collected from other sources than the levy in question far exceeded the estimate made by the Governor, and that had no levy at all been made, all legitimately estimated expenses for the year could have been met, and were met, and the state had over two million and a quarter left in the treasury, without any necessity for a levy and without using any of the new levy.

Now, these facts must be taken into consideration in interpreting the statutes which authorize the board to add 20 per cent. to the estimated expenses for delinquency in the payment of taxes for the ensuing year. Section 7374, Rev. Laws 1910, contains the following provision:

"* * * For the purpose of computing the amount of the levy hereby made, the State Board of Equalization shall, at its annual meeting on the third Monday in June of each year, or as soon thereafter as the total valuation of all the property in this state subject to taxation under the provisions of this chapter shall have been ascertained, and from day to day thereafter, until such time as they shall compute the amount appropriated to pay the expenses of the state government for the period afore-

said with 20 per cent. added thereto as an allowance for delinquent taxes. * * *"

The foregoing allowance for delinquent taxes refers to the delinquency in payment of taxes levied for the ensuing year, and not to delinquency to taxes theretofore levied. To illustrate, should the board make a levy of 2 mills, then they are authorized, under the foregoing statute, to estimate that 20 per cent. of such levy will be delinquent in payment, and they are authorized to add such 20 per cent. to the other estimated expenses in order that the state may be upon a cash basis for the ensuing year.

Now, we do not construe the above statute as a mandatory provision requiring the Board of Equalization to add such 20 per cent. item to the estimated expenses, whether it be necessary or not, but, as we view and interpret the above section, said provision for adding 20 per cent. for delinquency is made in contemplation that there will be a necessity for levying a tax, but if there be no necessity for levying a tax at all, then the board is not compelled to add the 20 per cent. for delinquent taxes, and the stipulated facts in this case show that the board, under its own lowest estimate, would have had more than $584,000 necessary to pay the year's expenses, and that as an actual fact it had over two million and a quarter dollars more than was necessary without making any levy at all.

But the foregoing is not all the undisputed evidence of arbitrariness and lack of authority of the board to make the levy in question, or to add the 20 per cent. as delinquency in the collection of same, for it is stipulated that at the time the levy was actually made, September 30, 1920, there had been collected for the two preceding months, not counting what had been collected in September, but for July and August there had been collected from other sources than ad valorem taxes the sum of $1,982,217.06. Therefore, at the time the estimate was actually completed and the rate certified there was on hand in the state treasury $2,214,771.55, and from July 1, 1921, to September 13, 1921, the time the estimate was actually completed, $1,982,217.06 had been collected, making a cash balance on hand in the treasury amounting to $4,-196,988.61, which, added to the $5,405,000, the lowest estimate expected to be collected and which lowest estimate was little over half of what was actually collected, makes a sum of $9,601,988.61 actually on hands at the time the estimate was actually completed, and was $2,566,183.73 more than was

necessary without adding the 20 per cent. item, and the sum of $1,160,222.75 more than was necessary with the 20 per cent item added.

This showing, being disclosed by the actual facts stipulated to in the record, is nothing less than conclusive that the 20 per cent. item amounting to $1,406,960.98 was purely arbitrary and without authority of law, and even with that estimate added it had on hands, including what they estimated as being able to collect, over $1,160,000 more than was necessary to run the state's expenses with the 20 per cent. item added. The stipulated facts show further that the sum of $1,620,052.44 was collected from ad valorem taxes which the board had refused to consider in its estimate of what might be collected, and the sum of $8,463,349.25 was actually collected during the year from other sources than ad valorem taxes. All these stipulated facts being taken into consideration with the stipulated fact that at the time the estimate and rate were actually computed, September 13, 1920, the amount of cash on hand in the treasury plus the amount of the lowest estimation which they expected to collect was $2,566,183.73 more than the state would need for that year's expenses, shows conclusively that the 20 per cent. item was purely fictitious and arbitrary and added for the purpose of increasing the amount of expenses to be raised in order to justify a levy.

It is contended, also, in justifying the addition of the 20 per cent. item, that inasmuch as the statute reads:

"For the purpose of computing the amount of the levy hereby made, the State Board of Equalization shall, at its annual meeting on the third Monday in June of each year, or as soon thereafter as the total valuation of all the property in this state subject to taxation under the provisions of this chapter shall have been ascertained. * * * with 20 per cent. added thereto as an allowance for delinquent taxes * * *"

—that the board is compelled to add the 20 per cent. item for delinquent taxes in order to estimate the total expenses, or as a means of estimating the total expenses, and that the statute requires it to be done in order to complete the estimate of the total expenses. With this contention we cannot agree. We find nothing in the statute to warrant or support such contention. Beginning with the first part of the above quotation, this 20 per cent. item is authorized, as we interpret it, for the purpose of computing the amount of the levy to be made;

and is authorized only when a levy is necessary, and if no levy is made and no levy necessary and there is plenty of money in the treasury to pay the expenses of the state for the ensuing year without making any levy, then and in such event there is no authority for adding the 20 per cent. as delinquent taxes in a levy that is not going to be made. In other words, the authority for adding the 20 per cent. item is coupled with and depends upon the necessity for making a levy.

In view of this contention and these facts it appears to us that the 20 per cent. item was fictitious and unnecessary and that the board was without authority to make it. This being true, no levy at all was necessary and the 1.5 mill levy thus made was an unnecessary and unauthorized burden upon the taxpayers of the state and was void.

It is contended also that the board was not required to take into consideration the amount of surplus balance on hand in making its estimate. It is even contended that the board had no authority to do so, and that it exceeded its authority by doing so. And it is further contended, as the amount of surplus balance on hand exceeded the amount of said deficiency item, and that if the board had not included said surplus balance in its estimate, but had left it as an unexpended balance in the treasury, there would have been sufficient funds to take care of the deficiency item, and for this reason the deficiency item should be sustained and the levy held valid as to such item, although the board had no authority to include such item in its estimate. But this logic seems too flimsy to constitute a basis for the validity of a deficiency item. We cannot understand how two wrongs may make a right, nor how two violations of the law may make a compliance with the law. We cannot comprehend how the fact that the board violated the law by including the deficiency item can be justified in so doing by violating the law as to the cash balance item, nor how the deficiency item can be made valid by violating the law as to the cash balance item.

Section 7375, supra, plainly and positively enjoins, "That the tax so levied shall in no case exceed the amount appropriated by the Legislature." This being the plain provision of the statute, we feel it our duty to construe the law as it is. But in our opinion neither the Constitution nor the statutes support the theory that the board was without authority to include the surplus cash

balance in its estimate. The clear intent of the law refutes such theory. The clear purpose of the law is that if the expenses of state government should have been less than was expected during the preceding year and the amount of revenue collected during such year was greater than was expected, thereby leaving a cash balance in the treasury over and above all legal requirements and outstanding indebtedness, that such cash balance should serve toward lessening the burden of the tax-payer for the ensuing year; otherwise the very condition would be brought about which plaintiff claims was intended to be brought about by the Board of Equalization, namely, the creation of a large surplus fund for the purpose of exploitation.

The proposition is too simple to need further discussion. In our opinion the Board of Equalization not only had authority to include the surplus cash on hands, but it was its duty, under the law, to do so in order thereby that the rate upon the tax-payer would be lessened for the ensuing year.

It has been moved by defendant for judgment on the agreed statement of facts on the ground that, as contended by defendant, the Legislature having made emergency appropriations amounting to $3,006,665.05, thereby ratifying and confirming the act of the board in making the aforesaid deficiency estimate, such deficiency estimate should be sustained. This contention we cannot sustain. The fact that the Legislature made emergency appropriations greater than the amount of said deficiency items does not establish the validity of such deficiency item. Both the Constitution and statutes say that such character of items shall not be included, and there is nothing in the emergency bills, passed by the Eighth Legislature, which either repeals or attempts to repeal any existing constitutional or statutory provisions on the subject, nor is there anything in said emergency appropriations which attempts expressly to validate such deficiency item.

It is further sought to sustain the entire levy, including said deficiency item, on the ground that to hold a portion of the levy invalid will work a hardship on taxpayers who have already paid their taxes for the year in question, but the court is not responsible for such condition, nor for the law being as it is. The law says the board has no authority in any case to make a rate greater than for the amount appropriated. And if there be an amount on hand sufficient to pay all expenses for the ensuing year, then no levy is necessary and no authority for adding the 20 per cent. item unless a levy is necessary.

It is contended, though, that the entire levy should be sustained because of such condition; contended that smaller taxpayers were unable to employ counsel to protect them, while larger taxpayers have paid their taxes under protest and will thereby be enabled to recover the amount of taxes they have paid and the smaller taxpayer left to bear the burden; but the answer to this contention is that such condition would not have existed had not the Board of Equalization exceeded the positive injunction of the law in including such deficiency item in its estimate, and we indulge the hope that this clear statement of the law may serve to prevent its violation in the future.

In our opinion the entire levy was void and plaintiff is entitled to the relief prayed for. The defendant is hereby enjoined from collecting the tax herein involved.

MILLER, ELTING. KENNAMER, and NICHOLSON, JJ., concur. McNEILL, J., dissents. KANE, J., desires to express his views in a separate opinion. JOHNSON, J., not voting.

——————

McNEILL, J. (dissenting). I am unable to agree with the conclusion reached by the majority opinion announced in the 12th and 13th paragraphs of the syllabus or that part of the opinion as discussed and announced as the law in those two paragraphs. In view of the vast importance of the decision and the force and effect of the law as announced, I feel it my duty to give my reason for dissenting. The case is of importance because the real question is whether a few taxpayers may, by reading into the statute language that it does not contain, escape their just proportion of the taxes levied for maintaining the state government. I say this because section 7, chapter 107, Session Laws 1915, provides where a person has paid his tax, even under protest, if he fails to file suit for recovery of the money paid within 30 days he has no remedy. Such was the holding of this court in the cases of A., T. & S. F. R. Co. v. Eldredge, 67 Okla. 110, 169 Pac. 1071; Duling. Co. Treas., v. First National Bank of Woleeska, 71 Oklahoma, 175 Pac. 554; Brown, Co. Treas., v. Hennessey State Bank, 78 Okla. 141, 189 Pac. 355. The agreed statement of facts discloses that on June 30, 1921, there had been collected over one-half of this tax, or that much re-

ported to the State Treasurer; the amount paid since said time is not disclosed, but from this statement it is apparent no one will be benefited, except a few large taxpayers, who have suits pending for recovering the tax paid. While this fact does not change the law, yet certainly under such a state of facts, the court should not read into the statute something it does not contain and permit the few to escape taxation.

The petition contains many allegations; among the allegations are: That the board abused its discretion, and acted arbitrarily in violation of law in computing the levy. A demurrer was filed to this petition. The demurrer admitted all the allegations of the petition, which demurrer was overruled by this court. The parties then submitted the case to this court upon an agreed statement of facts; and upon the facts as agreed to, and not those alleged, the case is before this court for consideration. The agreed statement of facts eliminates the allegations of the arbitrary actions and abuse of discretion upon the part of the board. The case in its final analysis depends on whether the board in computing the levy considered items it had no authority to consider, and if it did, is the tax excessive when those items are eliminated? The only contention upon part of the plaintiff is the tax is illegal, because excessive. The question, then, for consideration is what items the State Board of Equalization should consider in computing the levy. The agreed statement of facts includes many facts which are immaterial and unnecessary to consider. The rule is well settled that, before a tax can be enjoined, the burden of proving the tax is excessive is upon the party attacking the levy. It is not sufficient to prove that the State Board of Equalization in computing the levy considered items that were not authorized by law, but whether the levy is excessive when the proper items are considered. The case has not been briefed since filing the agreed statement of facts; the briefs filed for consideration of the court were in support of the demurrer to the petition.

It is admitted that sections 2, 3, and 4 of Article 10 of the Constitution conferred that authority and power upon the State Legislature to levy a state tax. Section 21 of article 10 of the Constitution provides for a State Board of Equalization and designates who the members are, and defines the duties of the state board as follows:

'To adjust and equalize the valuation of real and personal property of the several counties in the state, and it shall perform such other duties as may be prescribed by law."

The State Legislature to carry out the provisions of section 2, article 10, of the Constitution, which section required the Legislature to provide for an annual tax, enacted section 7374, Rev. Laws 1910, and in said section conferred upon the Board of Equalization certain duties in relation to making the tax levy as authorized in section 2 of article 10 of the Constitution. It is held by the majority opinion, in which I concur and which is concurred in by the attorneys for the plaintiff in their brief, that the Legislature itself levies the taxes, and the Legislature has conferred upon the State Board of Equalization the duty of computing this tax, which is nothing more than a mathematical computation. This duty involves no discretion or judgment on behalf of the board, but simply authorizes the board to make the computation as directed by section 7374, supra. This is true, with one exception, to-wit, when the board estimates the income from other sources than from the tax levied. In this matter they must exercise their judgment and discretion. It is stated in the majority opinion, and correctly so, that the State Board of Equalization in computing the levy are simply performing a ministerial duty. It is also admitted that sections 7374 and 7375, Rev. Laws 1910, are the only statutes necessary to be considered to determine whether the tax is excessive, and, in fact, the whole question must be decided by construing section 7374, Rev. Laws 1910.

Let us examine this statute and see whether the Legislature expressed its intent in plain and unambiguous language or whether the language is ambiguous and in order to arrive at the intent we must seek the aid of certain rules of construction. The majority opinion holds that the statute is unambiguous, and the attorneys for the plaintiff, who are attempting to defeat this tax, assert in their brief that the statute is plain and unambiguous, and contend it is the duty of the State Board of Equalization to strictly follow the same. I agree with this statement of the law. With this principle of law definitely fixed in our minds and upon which we all agree, let us apply the law as contended for by the plaintiff and as announced by the majority opinion and see what result we will reach when making the computation to strictly following the plain mandate of the Legislature announced in section 7374, supra.

The first portion of the section of the statute reads as follows:

"There is hereby levied annually an ad valorem tax upon all property in this state which may be subject to taxation upon such basis, a tax sufficient in addition to the income from all other sources, to pay the expenses of the state government for each fiscal year ending on the thirtieth day of June, and to pay the deficiency, if any, for the year next preceding: Providing, however, that the total amount of such levy shall not exceed the maximum amount provided by the Constitution that may be levied on an ad valorem basis for state purposes, including one-fourth of one mill for common school purposes to be levied, collected and distributed as other school money".

There is no dispute over this portion of the statute, unless it would be whether we include the item deficiency for the year next preceding. The next portion of the section of the statute reads as follows:

"For the purpose of computing the amount of the levy hereby made, the State Board of Equalization shall, at its annual meeting on the third Monday in June of each year or as soon thereafter as the total valuation of all the property in this state subject to taxation under the provisions of this chapter shall have been ascertained, and from day to day thereafter, until such time as they shall compute the amount appropriated to pay the expenses of the state government for the period aforesaid with twenty per cent. added thereto as an allowance for deliquent taxes".

The last part of the above section does not make a grammatical sentence, as pointed out by the annotator of the code, but its meaning is plain, and the majority opinion herein and the attorneys for plaintiff assert this statute is unambiguous. This portion of the statute confers a ministerial duty upon the Board of Equalization, a duty that involves no discretion upon the part of the board, but simply authorizes the board by a mathematical computation to ascertain two things: First, the amount of money appropriated by the Legislature; second, add 20 per cent. thereto for delinquent taxes. If there is any ambiguity in the two portions of the section of statutes above quoted, it is whether the board should add the amount of deficiency referred to in the first portion of the section to the amount of appropriation made by the Legislature. I think that is the proper construction, but let us admit, for the sake of argument, that you do not add to the deficiency for the preceding year, and let us apply the second portion of the statute to the facts and see what result we reach.

The board is to first ascertain the total value of the property in this state subject to an ad valorem tax. It was stipulated in this case that the total value of property subject to ad valorem tax as ascertained by the board was $1,695,797,187. The second duty under this provision is stated as follows: They shall compute the amount appropriated to pay the expenses of the state government for the period aforesaid. It was stipulated that the amount appropriated was $7,034,804.80. The statute then says, with twenty per cent. added for delinquent taxes. It was stipulated this was computed to be $1,406,860.67. These are the only two items mentioned in the statute. Now if we add these two items together we will have the appropriation made by the Legislature and the twenty per cent. added as the statute directs, and we will then have a total of $8,441,765.85.

After arriving at this amount, the statute then provides as follows:

"From the actual amount thus computed shall be deducted the estimated income of the state from all sources other than from the levy hereby made".

It is stipulated that the board estimated the income from all other sources than from the levy made at $5,405,000. This is the only item the statute directs the board to deduct. Now, let us follow the mandate of the statute and deduct this estimated income from the amount of appropriation with the twenty per cent. added, and we have $3,046,765.85. We then have the amount to be raised by the levy.

If you divide the value of the property subject to ad valorem tax into the amount to be raised, you will then have the number of mills to be levied on each dollar's worth of property.

This section then reads, the amount so ascertained shall be certified by the State Auditor, etc. So, by applying the law as announced by the majority opinion and as contended for by the plaintiff, towit, that the statute must be strictly followed, the amount to be raised by ad valorem tax was $3,046,765.85. The exhibit to the agreed statement of facts discloses that the mill and a half levy would raise something over $2,500,000. This is less than the amount required to be raised; so, by strictly following the statute, the amount of the levy would not be excessive. When we follow the plain mandate of the statute as written in plain and unambiguous language the contention of plaintiff fails. It is true the Board of Equalization considered items it

had no authority to consider, but when we eliminate those items, and consider what the statute does authorize the board to consider, the levy is not excessive. The levy, thus computed, is not in violation of section 7375, Rev. Laws 1910, because the estimated income and the amount to be derived from the mill and a half levy does not exceed the amount appropriated by the Legislature with the 20 per cent. added, but, on the other hand, is over $500,000 less than the amount appropriated.

The plaintiff, to avoid this tax and have it declared excessive, and the majority opinion of the court in declaring it excessive, do so, first, by failing to add the 20 per cent., as directed by the statute; second, by failing to follow the portion of the statute which reads as follows:

"From the actual amount thus computed shall be deducted the estimated income of the state from all sources other than from the levy hereby made".

They attempt to amend this portion of the statute in the majority opinion by adding thereto, "and the amount of surplus on hand in the State Treasury." The plaintiff contends, you shall amend it, by adding not only "and the amount of surplus on hand in the State Treasury", but also, "deduct any taxes levied for previous years in the process of collection."

It is my contention that this court is not authorized to read into the statute language that it does not contain, and thereby declare a tax excessive, and permit a few large taxpayers to escape paying their just proportion of the tax. No one contends that the above portion of the statute is ambiguous; no one even intimates that it is. The language used expresses one idea, and that is a mandatory duty, to wit: That the Board of Equalization shall deduct the estimated income to be derived from other sources, and that is the only item the statute authorizes the board to deduct. The agreed statement of facts does not charge any abuse of discretion or fraud upon the board in arriving at this estimated income. It is so elementary that courts have no right to amend a plain and unambiguous statute by reading into it language that it does not contain; I will only cite a few cases to support my contention.

In the case of Soliss v. General Electric Co., 213 Fed. 204, the court, speaking through Judge Sanborn, said:

"Courts may not assume or presume intents or purposes not fairly indicated in the statute, and then enact by judicial construction provisions to effect them. And the legal presumption is that the legislative body expressed its intent in the statute. that it intended what it expressed and nothing more. * * *"

In the case of Sweet v. United States 228 Fed. 421, the court said:

"Where the terms of a statute are clear and their meaning certain, construction has no place or office. The legal presumption is that the legislative body meant what it said, and it is the duty of the courts not to amend or revoke, but to give effect to the enactment."

This same rule of construction has been applied by this court in the case of Falter v. Walker, 47 Okla. 527, 149 Pac. 1111:

"One of the most elementary canons governing the construction of statutes is that, if the language used by the Legislature conveys a definite meaning which involves no absurdity, nor any contradiction of any other parts of the statute, then that meaning apparent on the face of the statute must be accepted."

The above authorities in plain and unambiguous language announce the rule that courts have no power or authority to presume the Legislature intended what the Legislature did not express in the statute, and then seek by judicial construction to enact an amendment.

The plaintiff in its brief insists that the Board of Equalization must follow the strict mandate of the statute in computing the levy, and must not add any items not mentioned in the statutes, but when it comes to what the board shall deduct from the amount of appropriation, they utterly disregard the rule contended for. As heretofore stated, in this manner they seek to have the court read into the statute the following items to be deducted, which are not in the statute: First, "Deduct any surplus on hand in the State Treasury. Second, "Deduct any taxes levied for previous years in the process of collection". They fail to cite an authority that authorizes the courts to read into a plain and unambiguous statute language not expressed therein. When they asked this court to deduct these items they pointed out no provision of the statute or Constitution that would authorize us to do so. They admit the state board did deduct the surplus on hand, which amounted to over $2,000,000. and rely upon that fact as the authority of the board for so doing. If we read into the statute language it does not contain, they evade the tax; otherwise the tax is

legal. The opinion cites no authority that authorizes this court to amend a plain and unambiguous statute by reading into it language that it does not contain. The majority opinion uses this language: "That we feel it our duty to construe the law as 'it is'". I cannot agree that they have done this, and if there is any language in the statute that expresses such an idea that you deduct any surplus on hand, or is subject to such a construction, I think it should be set out. They refer to no language that has any such meaning, nor do they refer to the language they contend has such meaning.

If the Legislature intended the State Board of Equalization to deduct other items than those mentioned, it could have expressed that intention in some language. It did not do so, but limited the authority of the board to one item. It is apparent that this was not an oversight upon the part of the Legislature, because if we look to section 7378, Rev. Laws 1910, in dealing with counties, we find the State Legislature referred to the item, unexpended balance on hand of the previous year.

The Legislature in 1917, in dealing with the county excise board in making a levy, referred the county excise board to any surplus or balance of revenue on hand. The Legislature made provision for the county excise board to consider this item, but made no reference for the State Board of Equalization to consider this item. If they referred to this item when dealing with county and other municipalities why did they not refer to it when defining the duties of the state board? The answer is this: The State Board of Equalization has nothing to do with this item; this was for the Legislature itself.

It might be suggested, What is to become of the balance on hand. if there is a surplus in the treasury? In the first place, it is not anticipated there will be a surplus. As stated in the case of S. L. & S. F. Ry. Co. v. Thompson, 35 Okla. 138, 128 Pac. 685, as follows:

"The statute contemplates that each year shall take care of itself; that no greater amount of taxes shall be levied during any one year than shall be necessary to take care of the obligations of the municipality, incurred or maturing during that year, which amount shall be fixed by an approved estimate before the tax is levied."

This same theory was advanced in the following cases: St. L. & S. F. R. Co. v. Tate, 35 Okla. 563, 130 Pac. 941; St. L. & S. F. R. Co. v. Amend, 44 Okla. 602, 145

Pac. 1117; St. L. & S. F. Ry. Co. v. Hayworth, 48 Okla. 132, 149 Pac. 1086; A., T. & S. F. R. Co. v. Eldredge, 67 Okla. 110, 169 Pac. 1071. How can it be said the Legislature intended to include surplus in the State Treasury, when the policy of the law is, there should be no surplus? Second, if there is a surplus on hand, it is for the Legislature to appropriate the same, not the Board of Equalization, which has only ministerial duties to perform in making the levy; nor for this court in its judicial capacity.

The inference in the majority opinion that the surplus on hand, if any, might be wrongfully expended unless applied in this manner by the State Board of Equalization, in my judgment, is used unadvisedly, for the majority opinion in plain and unambiguous language holds the State Board of Equalization cannot spend any money that may be in the treasury, nor can the treasurer, nor any one else. There is only one way this money can be expended, and that is to pay appropriations made by the Legislature. The spending of surplus funds on hand, or what shall become of them, is a question for the Legislature, and not for the courts or the State Board of Equalization. In the agreed facts in the instant case it is stipulated that the Eighth Legislature of 1921, which convened after the Board of Equalization had made the levy, passed emergency appropriations amounting to some $3,000,000. These appropriations were directed to be paid out of money on hand. This answers the question, What is to become of the money on hand? It is for the Legislature to appropriate, and not for the courts.

The State Legislature appropriated surplus money on hand to pay for maintaining certain state institutions. This court, by reading into the statute language it does not contain, directs the State Board of Equalization to deduct that amount from the amount of appropriations for the fiscal year ending June 30, 1921, to ascertain the amount to be raised by taxation, and, of course, if it is deducted for that purpose, it must be used for that purpose. It is apparent the surplus on hand cannot be used to pay the appropriations for the fiscal year ending June 30, 1921, and also be used to pay the emergency appropriations by the Legislature in 1921.

That the Legislature never intended that the State Board of Equalization should consider surplus on hand must be apparent, for if such was the intent, it would have im-

posed a duty upon the State Auditor or Treasurer to report the amount on hand each year to the State Board of Equalization. Section 8072, Rev. Laws 1910, requires the auditor to make a semi-annual report to the Governor, and also a biennial report, which report the Governor shall transmit to the Legislature. The third subdivision of that section provides the report shall disclose the "unexpired" [unexpended] balance of funds on hand. It would be useless to report this fact to the Legislature, if the Legislature did not intend to appropriate the same for such purposes as it deemed advisable. If the State Board of Equalization should consider this item each year when making the levy, why should not a report be made to said board? If the Legislature has nothing to do with this item, why report it to the Legislature?

If we look to the duties of the State Treasurer, we find section 8142, Rev. Laws 1910, provides for the State Treasurer making a semi-annual report, and also a biennial report, to the Governor, and provides the Governor shall submit the biennial report to the Legislature. This report must disclose the balance remaining in the treasury. No provision is made for submitting such a report to the State Board of Equalization, either by the State Auditor or State Treasurer or the Governor.

If this court can read into this statute language that authorizes the State Board of Equalization to deduct any surplus on hand, and without citing authority for doing so, why can it not by the same reasoning read into the statute that you deduct for taxes in the process of collection for previous years, or other items? In my judgment the majority opinion makes a plain and unambiguous statute ambiguous, and the interpretation of the statute in the future will be doubtful.

In one portion of the opinion it is held that the duty of the State Board of Equalization is ministerial and authorizes the making of a mathematical computation of certain items as directed by the Legislature. In the other part of the opinion it fails to apply this rule and says you must first find the amount of appropriation, but fails to require the board to add 20 per cent. as directed. Even ignoring this portion of the statute would not make the levy excessive, but the opinion directs that after ascertaining the amount of the estimated income from other sources and deducting the same, the board shall then deduct the surplus on hand. In order to declare the tax excessive, it is necessary to ignore the statute, first, by refusing to add 20 per cent., and again to ignore the plain wording of the statute by amending it and deducting the surplus on hand. In my judgment the first part of the opinion announced the law correctly, but the court in the majority opinion fails to apply the law it has announced.

There is some contention that the opinion will have no serious effect, nor amount to a discrimination between the taxpayers who have paid their taxes and failed to avail themselves of the statutory right and those who have paid and have suits pending because the next Legislature will probably make an appropriation or grant some relief to reimburse those parties who have paid their taxes and failed to bring suit to recover back the same. Why make a plain statute ambiguous, in order to invite more litigation? Why speculate on what a Legislature that has not been elected will do? And whether it will make such an appropriation would be for it to say. Whether it could make such an appropriation is not free from doubt. Section 52, article 5, of the Constitution provides as follows:

"The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time or by any statute of this state."

It would seem from this section that the Legislature could not pass a law that would authorize the parties who have no suit pending to bring suit to collect back the tax paid, for their right to recover is now barred by virtue of section 7, chapter 107, Session Laws 1915, and such a law would be in violation of the above section of the Constitution. Can the Legislature appropriate money to pay these claims when the party had a statutory right to bring suit to recover, but failed to avail himself of that right?

Section 2, article 10, of the Constitution provides:

"The Legislature shall provide by law for an annual tax sufficient, with other resources, to defray the estimated ordinary expenses of the state for each fiscal year."

Would an appropriation to pay those parties who now have no lawful claim come within the phrase, "ordinary expense of the state for the next fiscal year?" This question also may be doubtful. It may be said that it can be paid out of the funds on hand, but we are confronted with the majority opinion, which says it is the duty of

the Board of Equalization each year to consider these funds on hand, and deduct them from the amount of appropriation. The surplus on hand must be under the control of the Legislature or the State Board of Equalization. It is certainly not under control of both. The Legislature cannot use it for one purpose and the State Board of Equalization for another. Whether the large taxpayer, who has expended his money and gained an advantage, will permit the Legislature to deprive him of his victory without calling the attention of the Legislature to the above provisions of the Constitution and testing the force and effect of the same, remains to be seen.

This court should not fail to properly apply the law, although it may work a hardship on many, and give an advantage to a few. But, as I read the opinion, the court has read into the statute language it does not contain, and the force and effect of the same is to permit a few to escape paying their proportionate share to maintain the state government.

For reasons stated, I dissent.

I am authorized to announce Justices KANE and JOHNSON as concurring.