**HINES, Director Gen. of R. R., et al. v. DALTON, Co. Treas., Tulsa County.**

No. 11424—Opinion Filed June 12, 1923.

Rehearing Denied July 17, 1923.

(Syllabus.)

**1. Taxation—Levy by County Excise Board —Computation of Amount.**

Under section 9699, Comp. Stats. 1921, it is the duty of the county excise board to ascertain the total amount of expenses necessary for running a county and its municipal subdivisions for the ensuing year, "with 10 per cent. added thereto for delinquent taxes; they shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue" on hand, together with the probable income from all other sources than the taxes to be levied: that is, 10 per cent. of the total amount of expenses should first be added thereto, and therefrom the surplus balance on hand and probable income from other sources deducted afterward.

**2. Same.**

The duties of the State Equalization Board, as prescribed under section 9690, Comp. Stats. 1921, and the duties of the county excise board, as prescribed under section 9699, Id., in reference to the addition of a percentage as allowance for delinquent taxes, are the same; that is, in each case the respective boards must ascertain the total amount of revenue to be raised with the authorized percentage for delinquent taxes added thereto, and from such amount, the surplus balance and estimated probable income from other sources deducted and the rate of levy computed upon the remainder.

**3. Same.**

Taxes, though paid under protest, cannot be recovered under section 9971, Comp. Stats. 1921, on the sole ground that the county excise board first added 10 per cent. to the total amount of revenue to be raised and deducted the surplus balance and probable income from other sources afterward; it being contemplated by statute that the 10 per cent, as an allowance for delinquent taxes shall be added first, the surplus balance and probable income deducted afterward, and the rate of levy computed upon the remainder.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by Walker D. Hines, Director General of Railroads of the United States, and the Atchison, Topeka & Santa Fe Railway Company against Ed Dalton, County Treasurer of Tulsa County, to recover taxes paid under protest. Judgment for defendant, and plaintiffs bring error. Affirmed.

Cottingham, Hayes, Green & McInnes and Frank G. Anderson, for plaintiffs in error.

John M. Goldesberry, Co. Atty., and James Harrington, Asst. Co. Atty., for defendant in error.

HARRISON, J. As plaintiffs below, plaintiffs in error brought this action to recover certain taxes which had been paid under protest, and from judgment for defendant, prosecutes this appeal.

The controversy arose out of conflicting interpretations of section 6, ch. 226, Sess. Laws 1917 (section 9699, Comp. Stats. 1921); the portion of which pertaining to this controversy reads:

"Section 6. When the excise board shall have ascertained the total assessed valuation of the property taxed ad valorem in the county and in each municipal subdivision thereof, and shall have computed the total of the several items of appropriations for current expense and sinking fund purposes for the county and each municipal subdivision thereof with ten per cent. (10%) added thereto for delinquent tax, they shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years, together with the amount of the probable income of each from all sources other than ad valorem taxation; provided. * * *"

The point in dispute was whether the ten per cent. authorized by said statute to be added as an allowance for delinquent taxes should be computed upon and added to the gross amount of estimated expense before the "surplus balance on hand" and the "probable amount of income from other

sources" are deducted, or whether the "surplus balance on hand" and "probable income from other sources" should be deducted first, and the ten per cent. computed upon and added to the remainder. that is, upon the net expense to be raised; the taxes sought to be recovered being the difference between what such taxes actually were, by reason of the ten per cent. for delinquent taxes having been added to the total amount of estimated expenses, and the surplus on hand plus the probable income from other sources afterward deducted therefrom, and what they would have been had the surplus balance and probable income been deducted first and ten per cent. of the balance added thereto afterwards. Plaintiffs contend that the "surplus balance on hand" and "probable income from other sources" should be deducted from the gross amount of estimated expenses first, and then the "ten per cent." computed upon and added to the balance or net amount of expenses to be raised. Defendant in error contends that the ten per cent. should be computed upon and added to the total amount of expenses first, and the "surplus balance on hand" and "probable income from other sources" deducted afterward.

Plaintiffs in error cite El Reno Wholesale Gro. Co. v. Taylor, 87 Okla. 140, 209 Pac. 749, as decisive and controlling upon the point in issue. Defendant in error contends that such case does not decide the question presented here; that the point in issue here was not before the court in El Reno Wholesale Gro. Co. v. Taylor, supra: but he cites Going, Co. Treas., v. A., T. & S. F. R. Co., 88 Okla. 283, 213 Pac. 84, decided February 13, 1923, as being decisive of the question in this case. In reply plaintiffs in error contend that the case of Going, Co. Treas., v. A., T. & S. F. R. Co., supra, is not decisive; that the point in dispute here was not before the court in that case—and thus their views diverge.

As to the El Reno Wholesale Gro. Co. Case, supra, it is true that the real point in controversy here was not before the court for decision in that case. The question before the court in that case was the powers and duties of the State Board of Equalization, under section 7374, Rev. Laws 1910 (section 9690, Comp. Stats. 1921), in reference to adding the "20 per cent.", which the State Board of Equalization is authorized under such section to add as an allowance for delinquent taxes. The real point in dispute was, not as to when the "20 per cent." therein provided for should be added, nor to what it should be added, but whether it should be added at all, in a case where no taxes were needed; where the "balance on

hand" plus "the probable income from other sources" was sufficient to meet the entire legislative appropriation without making any tax levy at all for the ensuing biennial period. The question was whether the provision for adding the "20 per cent." was authorized by said section where no levy at all was necessary, and the court held the board had no authority to add "20 per cent." for delinquent taxes when it was unnecessary to levy any tax, the "balance on hand" plus "the probable income from other sources" being amply sufficient to meet all legislative appropriations without making any levy. But in that case the court did say, not by way of deciding the point in question here, but by way of defining and explaining the duties and powers of the board under said section 7374, supra (section 9690, Comp. Stats. 1921), in order to determine whether the powers therein conferred were violative of section 21. art. 10. of the Constitution, in section 10 of the syllabus:

"Under section 7374, Rev. Laws 1910, the Board of Equalization is charged with the duty of ascertaining the total value of all property in the state. and with computing the amount appropriated to pay expenses of government for each fiscal year, with 20 per cent. added thereto as an allowance for delinquent taxes, and from such sum deducting the estimated income from all sources other than from ad valorem taxes, and of computing the rate of levy necessary to raise the amount required to be raised for each fiscal year. Held, the duties thus prescribed by said section of statute do not exceed the authority granted under said section 21, art. 10, of the Constitution."

It will be observed that in the foregoing paragraph of the syllabus, and for the purposes above mentioned, it is said:

"Under section 7374, Rev. Laws 1910, the Board of Equalization is charged with the duty of ascertaining the total value of all property in the state and with computing the amount appropriated to pay expenses of government for each fiscal year with **20 per cent. added thereto** as an allowance for delinquent taxes, and **from such sum** deducting the estimated income from all sources other than from ad valorem taxes. * * *"

While the language in the syllabus. as well as the language in the opinion, is used merely to define and explain the powers and duties of the State Board of Equalization, in order to determine whether such powers were violative of the Constitution, yet said language incidentally expresses the view of the court on the point presented here and thus indicates how the court might have held had the same question been presented for decision in that case; the indica-

tion being that the court would have given the statute the literal effect of its plain language, to wit:

"For the purpose of computing the amount of the levy hereby made, the State Board of Equalization shall, * * * compute the amount appropriated to pay the expenses of the state government for the period aforesaid, with 20 per cent. added thereto as an allowance for delinquent taxes. * * * From the actual amount thus computed shall be deducted the estimated income. * * *"

The language, "with 20 per cent added thereto," raises the question, 20 per cent. of what added to what? Answer: 20 per cent. of the total appropriation added to the total appropriation— the surplus balance on hand and the probable income from other sources to be afterward deducted; that is, deducted from the total amount of the expenses plus 20 per cent. of said total amount of expenses. This was our view of the statute when the opinion in El Reno Wholesale Gro. Co. v. Taylor Case was rendered, and is our view now. There is nothing in the syllabus nor in the opinion indicating a different view, nor intimating a different meaning, and we are unable to see how it could be so distorted as to give it the meaning contended for here. The fact that the court in that case held that the Board of Equalization had no authority to add 20 per cent. as an allowance for delinquent taxes, where there was no tax to be levied, does not imply that the board would have no authority to add such 20 per cent. for such purpose, if there were a tax to be levied, nor does it imply that if a tax were to be levied, the Board of Equalization would not be required to add such 20 per cent. as an allowance for delinquent taxes in the manner prescribed by statute. In other words, if there is no tax to be levied, the Board of Equalization has no authority to add 20 per cent. as an allowance for delinquent taxes, but if there is a levy to be made, then the board has authority to add 20 per cent. as an allowance for delinquent taxes, but must add same in the manner prescribed by statute.

And, in a measure, the same is true in the cases of Going, Co. Treas., v. A., T. & S. F. R. Co., supra, and Going, Co. Treas., v. Carter Oil Co., 88 Okla. 222, 214 Pac. 922, decided Feb. 13, 1923. The exact question presented here was not presented for decision in either of the above cases, but in both cases, in order to make his decision clear on the question presented, viz.:

"That the surplus in the common school fund and the estimated income of that fund from other sources than the ad valorem tax should not be considered as surplus revenue of the county or as an estimated income of the county"

—Mr. Justice Cochran, who delivered the opinion in both cases, said:

"Section 9699, Comp. Stats. 1921, contemplates an appropriation for the current expenses of the county and an appropriation for the aid of common schools; that the various items of appropriation should be totaled and 10% added for delinquent taxes; that there should be deducted therefrom the surplus revenue of the county on hand at the end of the fiscal year and the estimated income from sources other than ad valorem tax, and the difference will be the amount to be raised by ad valorem tax; but the surplus in the common school fund and the estimated income of that fund other than ad valorem tax should not be considered as surplus revenue of the county or estimated income of the county"

—thereby expressing the view of the court as to the powers and duties of the county excise board, under section 9699, and thus indicating that the 10 per cent. allowance for delinquent taxes should be computed upon and added to the total amount of estimated expense first, and that the surplus balance on hand together with the probable income from other sources be deducted afterward.

The provisions of section 9690 and the provisions of section 9699 are identical as to the powers and duties of the respective boards dealt with. The former section defines the duties and powers of the State Board of Equalization, the latter section prescribes the duties and powers of the county excise board. In the former section the State Board of Equalization totals up the legislative appropriations, adds 20 per cent. thereto as an allowance for delinquent taxes, and from the actual amount thus computed deducts the surplus balance on hand and the probable income from other sources than the tax to be levied. In the latter section, the county excise board totals up the items of expense necessary to run the county for the ensuing year and adds 10 per cent. thereto as an allowance for delinquent taxes, and therefrom deducts the surplus balance and the probable amount of income from other sources.

We think this should make it perfectly plain as to what are the powers and duties of the respective boards and as to when the per cent. as an allowance for delinquent tax should be added.

It is not disputed that this view is correct under the literal meaning of the statute; but it is contended by plaintiffs in error that to give such statute its literal meaning is an absurdity, and counsel cites a number

of decisions, among which are Town of Grove v. Haskell, 31 Okla. 77, 116 Pac. 805, Ledegar v. Bockhoven, 77 Okla. 58, 185 Pac. 1097; and McGannon v. State, 33 Okla. 145, 124 Pac. 1063, to show that where an act is susceptible of two constructions, the court will give it the most reasonable one; that if following the plain language of an act would produce absurd results, and a different construction render it free from such consequences, the court will give such act a construction free from absurd consequences; that where there is doubt or ambiguity, the court will give an act that interpretation which is most reasonable; that statutes will receive a sensible construction so as to avoid absurd and unjust consequences, etc. While the correctness of the rule as announced in the decisions cited is readily conceded, yet they are of no benefit here, the statute in question here not being reasonably susceptible of two constructions. The legislative intent is plain in both, the section relating to the State Equalization Board and the section relating to county excise boards. Both these statutes have been in force since 1909, and have been operative since said date, and the Legislature has seen no reason for changing them. And, aside from the rule that it is not the province of courts to inquire into the wisdom of the Legislature, we will say that we are unable to see the absurdity in the literal effect of such statutes which plaintiffs in error claim to see. The Legislature may have had a very wholesome purpose in view in making these provisions as they are; the court takes cognizance of the fact that the Legislature has made specific provision for putting the state and each county and subdivision thereof upon a cash basis, and by other laws has fortified against reckless incurring of indebtedness. The provisions of the statutes under consideration here are a part of the general scheme for maintaining the state and its municipal subdivisions upon a cash basis and preventing unjustifiable indebtedness.

The literal significance of the respective sections of statute under consideration plainly shows the legislative intent. To give such sections a different interpretation would be to disregard the manifest intent of the Legislature.

For these reasons, we think the trial court was correct in holding that plaintiffs were not entitled to recover.

The judgment is affirmed.

McNEILL, V. C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.