## BRANCH v. OKLAHOMA COUNTY EXCISE BOARD.

No. 28448. Aug. 3, 1938.

James D. Fellers, for plaintiff in error.

Lewis Morris, County Atty , B. C. Logsdon, Asst. County Atty., A. L. Jeffrey, Municipal Counselor, and A. P. Van Meter, Asst. Municipal Counselor, for Excise Board of Oklahoma County.

WELCH, J. The plaintiff in error protests and seeks to eliminate the entire ad valorem tax levy made for the general fund of Oklahoma City for the fiscal year 1937-38; his protest was denied, and he appeals to this court.

Using the figures given us in the brief of protestant, and assuming the correctness of the amount thereof and their application as by him suggested. we observe the following:

The total of the appropriations requested by the proper officials of the city was $3,563,135.60, and it was the duty of the excise board to make such appropriations in the amount requested if they could be financed by the income and revenue provided for the fiscal year. In re Tax Levies of City of Woodward, 143 Okla. 204, 288 P. 458.

If such total requests could not be so financed, the excise board must reduce such appropriations, but may not reduce the same more than sufficient to bring the appropriations within such limitations.

Morley v. Board of Education, 171 Okla. 46, 47 P.2d 170.

The total cash surplus is $973,344.24; the total estimated income from other sources is $2,411,740.63; the authorized tax levy of 1.7907 will produce $184,762.95. The three items of finance total $3,569,947.81, and if it were not necessary to add at least 10 per cent. for delinquencies as provided by chapter 85, S. L. 1933, it would have been the duty of the excise board to approve all requested appropriations in full. However, in Hines v. Dalton, 90 Okla. 239, 217 P. 168, and Atchison, T. & S. F. Ry. Co v. Myers, 114 Okla. 240, 246 P. 395, and Excise Board of Oklahoma County v. Cooper, 183 Okla. 388, 82 P.2d 824, this day decided, it was held that it is necessary to add the statutory percentage.

When the 10 per cent. is added to such total requests, as provided by law, it will be observed that it would require a total of $435,929.86 to be raised by ad valorem taxation, which cannot be done because that would exceed the millage rate of levy allocated by the excise board.

It is therefore necessary to reduce the requested appropriations to come within the income and revenue provided. Section 12677, O. S. 1931, as amended by article 13, chapter 66, S. L. 1935. Such total appropriations then could not exceed the total sum of $3,333,802.04, and the calculations would properly appear as follows:

| | |
|---|---:|
| Total appropriations | $3,333,802.04 |
| Deduct Cash Surplus | 973,344.24 |
| | $2,360,457.80 |
| Add ten per cent. for delinquencies | 236,045 78 |
| | $2,596,503.58 |
| Estimated receipts from sources other than ad valorem taxation | $2,411,740.63 |
| Balance necessary to be raised by ad valorem taxation | $184,762.95 |

It therefore follows that the protestant is in error when he asserts that the total appropriations could not exceed the sum of $3,310,968.68, under the facts and figures given us by him. He is also in error when he asserts that the total appropriations authorized by law could have been fully financed without an ad valorem levy Appropriations are not fully financed as provided by statute, except when there has

been provided a margin of safety for delinquencies in collections of items of finance to be collected in the future, which include estimated income from sources other than ad valorem taxation and income to be derived from the present tax levy. This margin of safety must be provided by adding the percentage for reserve to all of the appropriations, that is, to the portion of the appropriations financed by anticipated income from sources other than ad valorem as well as the part financed by ad valorem levy as was expressly held in Hines v. Dalton, supra, and Atchison, T. & S. F. Ry. Co. v. Myers, supra.

Protestant herein asserts that the appropriations are excessive and applies the rule in Hines v. Dalton, supra, and other cases to the effect that 10 per cent. must be added to the appropriations for delinquencies in arriving at the conclusion that the appropriations should be reduced and the amount of such reductions. When properly calculated the appropriations must be reduced to the sum of $3,333,802.04, as shown above.

After having arrived at the proper amount of appropriations by adding 10 per cent. to the entire amount thereof in the above manner, and by application of the rule that the 10 per cent. must be added when a tax levy is made, he then points out that the reduced and correct appropriations, so computed, can be financed without a tax levy if the 10 per cent. reserve is eliminated, and asserts the rule in the case of El Reno Wholesale Grocery Co. v. Taylor, 87 Okla. 140, 209 P. 749, to the effect that where the appropriations exclusive of the 10 per cent. reserve can be equaled by the cash on hand plus the estimate of income to be received from other sources, the 10 per cent. for delinquencies cannot then be added; nor any levy whatever made. (Observe from the above figures that the financing items of cash surplus and anticipated income from sources other than ad valorem taxation exceed the appropriations as reduced.)

There would seem to be merit in protestant's argument and contention in that regard were it not for the fact that the opinions relied upon are inherently inconsistent, as protestant's argument shows.

For the purpose of reducing the appropriations he applied the rule that 10 per cent. must be added to the appropriations as a reserve or margin of safety. Then addressing himself to the appropriations as reduced, he urges that under the other rule

the 10 per cent. must not be added, and follows to the conclusion eliminating and prohibiting the entire tax levy.

If this protest is sustained, the city will be in this position: Its appropriations and levy are protested. Its appropriations are reduced on the protest theory that the 10 per cent. reserve must be added, then its entire levy is destroyed on the protest theory that the 10 per cent. reserve must not be added. And all this is based upon the former decisions of this court.

Thus we find ourselves in this case in this position: If we follow the Hines v. Dalton and Atchison, T. S. & F. Ry. Co. v. Myers Cases, supra, we must hold that the 10 per cent. reserve must be added to the aggregate appropriations of the city for current expense. This necessarily results in a reduction of the aggregate sum appropriated, due to the limit of levy allocated by the excise board for city purposes, and the tax levy made for this fiscal year for the city will stand, as was held by the Court of Tax Review. But if we follow the rule of the El Reno-Taylor Case, supra, we must completely eliminate the tax levy because the aggregate of the appropriations as reduced is less than the aggregate of the cash on hand plus the probable or anticipated income from sources other than ad valorem taxation. Thus the application, to the facts of this case, of the rule of the El Reno-Taylor Case, supra, and the limit of levy allocated by the excise board, operates to forbid and prohibit the city from making any ad valorem tax levy whatsoever, although the excise board did allocate to the city a limit of 2 mills, which under the plain intent of the constitutional amendment of August, 1933, would and should clearly authorize the city to make an ad valorem tax levy for proper purposes within the 2-mill limit. Prior to that constitutional amendment this exact situation never arose, if, indeed, it could have arisen at all. If then the constitutional amendment, carried into effect, and operation by the excise board so changes the municipal appropriation and levy structure as to make possible such a situation, then we may well give thought to the rule of the El Reno-Taylor Case, supra, and determine whether we should, or indeed, whether we can, still adhere to that rule, and apply it to municipal levies. At any rate, we should carefully analyze that rule with due consideration of some other cases which indirectly bear upon it.

In the El Reno-Taylor Case, supra, this court considered state appropriations and state ad valorem tax levies. The statute then in force in reference to addition of a percentage for reserve or margin of safety was substantially the same, though not identical with the present statute, section 12678, O. S. 1931, as amended by chapter 85, S. L. 1933. In that case this court held in effect that when the cash surplus on hand plus estimated receipts from sources other than ad valorem taxes amount to more than the aggregate of state appropriations requested or needed, then and in that event no percentage need be added for reserve for delinquencies. While there are differences in the law and procedure between the making of a state levy on one hand, and the making of a city levy on the other hand, which might form some basis for distinguishing, and applying the rule of the El Reno-Taylor Case only to state levies, and declining to apply it in case of municipal levies, as in the case at bar, yet we desire to rest our conclusion upon the broader consideration that the rule of the El Reno-Taylor Case, if logically followed, would also apply to municipal levies. It is to be noted, however, that in the El Reno-Taylor Case the aggregate of the appropriations as originally made was less than the total estimated receipts from other sources, while in this case the aggregate of the appropriations as originally made for Oklahoma City was more than the estimated receipts from other sources. It must be noted further that the court was sharply divided upon the adoption of the rule in the El Reno-Taylor Case, and a strong dissenting opinion was filed pointing out that the decision clearly departed from the express provisions of the statute. It is also apparent from the opinion that large collections from sources other than ad valorem taxation had been actually received after the levy was originally made and before the case was decided, and the opinion discloses that this fact played some part, and perhaps an important part, in leading the majority of the court to the adoption of the rule there stated.

The rule of the El Reno-Taylor Case on this point is in effect that the addition of a percentage for reserve depends upon the making of an ad valorem tax levy. If the rule is sound and applicable to municipal levies, then the amount or proportion of the added percentage for reserve in any case ought logically to bear some continuing proportion to the tax levy made. That is, if no percentage for reserve is added when there is no levy, then when the appropriations are provided for in half by

ad valorem levy, the percentage of reserve should logically be added to only one-half of the appropriations. Or, to carry the example further, if no percentage for reserve is added when none of the appropriations are financed by tax levy, then when all of the appropriations are financed by tax levy the percentage for reserve should be added to all of the appropriations; it would logically follow that if only a portion of the aggregate appropriations are financed by ad valorem tax levy, then the percentage for reserve should be added only to that portion of the aggregate appropriations which is financed by a tax levy. But such reasoning was expressly repudiated by this court in Hines v. Dalton, supra, and Atchison, T. & S. F. Ry. Co. v. Myers, supra. In both of those cases the aggregate appropriations were largely financed by cash on hand plus estimated income from other sources. Only a small portion of the aggregate appropriations was financed by tax levies. It was there urged that the percentage of reserve should only be added to the portion of the appropriations financed by tax levies. But this court held in each of those cases that the percentage for reserve should be added to the sum of all of the appropriations. It was there held, in substance, that the express language of the statute required such conclusion. It seems not unfair to assume that those decisions are contrary to the foundation of the rule of the El Reno-Taylor Case as disclosed from a reading of the opinion in that case.

The practical effect of the opinion in the El Reno-Taylor Case was to hold that the addition for reserve was intended only to care for possible failure of revenue to be derived from the ad valorem tax levy then to be made, and that it was not intended to so guard against or offset possible failure of other items of finance. Although a literal compliance with the statute would have provided a margin of safety as to all items employed as items of finance, including anticipated income from sources other than ad valorem taxation as well as the ad valorem tax levy then made.

In the later case of Hines v. Dalton, supra, dealing with appropriations and levies of municipal subdivisions of the state, this court construed the following provisions of section 9699, Comp. Stats. 1921, to wit:

"When the excise board shall have ascertained the total assessed valuation of the property taxed ad valorem in the county and in each municipal subdivision thereof, and shall have computed the total of the several items of appropriations for current expense and sinking fund purposes for the county and each municipal subdivision thereof with 10 per cent. (10%) added thereto for delinquent tax, they shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years, together with the amount of the probable income of each from all sources other than ad valorem taxation; provided. * * *"

Therein it was held that the duties of the county excise board under such provisions of the statute were the same with respect to the addition of a certain percentage for delinquencies, as are the duties of the State Board of Equalization as held in the El Reno-Taylor Case, supra.

The court, however, held in paragraphs 1 and 2 of the syllabus as follows:

"Under section 9699, Comp. Stats. 1921, it is the duty of the county excise board to ascertain the total amount of expenses necessary for running a county and its municipal subdivisions for the ensuing year, 'with 10 per cent. added thereto for delinquent taxes; they shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue' on hand, together with the probable income from all other sources than the taxes to be levied; that is, 10 per cent. of the total amount of expenses should first be added thereto, and therefrom the surplus balance on hand and probable income from other sources deducted afterward.

"The duties of the State Equalization Board, as prescribed under section 9690, Comp. Stats. 1921, and the duties of the county excise board, as prescribed under section 9699, Id., in reference to the addition of a percentage as allowance for delinquent taxes, are the same; that is, in each case the respective boards must ascertain the total amount of revenue to be raised with the authorized percentage for delinquent taxes added thereto, and from such amount, the surplus balance and estimated probable income from other sources deducted and the rate of levy computed upon the remainder."

In the Hines Case, supra, the court rejected the argument of the protestant that under the El Reno-Taylor Case it was the intention of the Legislature that the reserve for delinquencies should not contemplate possible failure of any other items of finance except ad valorem taxes.

It will be observed that in the Hines Case the court declared that the statute,

section 9699, Comp. Stats. 1921, is not reasonably susceptible of two constructions. Therein it is said:

"It is not disputed that this view is correct under the literal meaning of the statute, but it is contended by plaintiffs in error that to give such statute its literal meaning is an absurdity, and counsel cites a number of decisions, among which are Town of Grove v. Haskell, 31 Okla. 77, 116 P. 805; Ledegar v. Bockoven, 77 Okla. 58, 185 P. 1097, and McGannon v. State, 33 Okla. 145, 124 P. 1063, Ann. Cas. 1914B, 620, to show that where an act is susceptible of two constructions the court will give it the most reasonable one; that if following the plain language of an act would produce absurd results, and a different construction render it free from such consequences, the court will give such act a construction free from absurd consequences; that where there is doubt or ambiguity, the court will give an act that interpretation which is most reasonable; that statutes will receive a sensible construction so as to avoid absurd and unjust consequences, etc., while the correctness of the rule as announced in the decisions cited is readily conceded, yet they are of no benefit here, the statute in question here not being reasonably susceptible of two constructions; the legislative intent is plain in both, the section relating to State Equalization Boards and the section relating to county excise boards. Both these statutes have been in force since 1909, and have been operative since said date, and the Legislature has seen no reason for changing them. And aside from the rule that it is not the province of courts to inquire into the wisdom of the Legislature, we will say that we are unable to see the absurdity in the literal effect of such statutes, which plaintiffs in error claim to see. The Legislature may have had a very wholesome purpose in view in making these provisions as they are. The court takes cognizance of the fact that the Legislature has made specific provision for putting the state and each county and subdivision thereof upon a cash basis, and by other laws has fortified against reckless incurring of indebtedness. The provisions of the statutes under consideration here are a part of the general scheme for maintaining the state and its municipal subdivisions upon a cash basis and preventing unjustifiable indebtedness.

"The literal significance of the respective sections of statute under consideration plainly show the legislative intent. To give such sections a different interpretation would be to disregard the manifest intent of the Legislature."

Although it appears that in the Hines Case the court distinguishes the El Reno-Taylor Case, the only distinguishing fact is that in the El Reno-Taylor Case no levy was necessary and in the Hines Case a small levy was necessary to assist in financing the appropriations. The distinction, however, denies the logic of the El Reno-Taylor Case. If in the El Reno-Taylor Case the law did not contemplate any additions for delinquencies in collections of estimated income from sources other than ad valorem taxation, why would it contemplate such additions for such purposes in the Hines Case? We think the answer is obvious and that the theory of the two opinions cannot be reconciled with logic and with the statutes.

In Protest of Oklahoma Pipe Line Co., 147 Okla. 163, 296 P. 406, the court again denied the logical basis and effect of the El Reno-Taylor Case.

In Atchison, T. & S. F. Ry. Co. v. Myers, supra, the court was confronted with the same problem and the same contentions in effect with which it had to deal in the Hines and Oklahoma Pipe Line Company Cases, supra, and therein is shown the lack of logic in the Hines Case, in distinguishing the El Reno-Taylor Case.

We quote paragraph 1 of the syllabus in the Myers Case.

"Where a statute is plain and unambiguous and its manifest intention and purpose is clearly shown by the language employed therein, the court is without authority to render a different meaning or construction thereon, in order to avoid an inequality that may arise in isolated cases."

And in the opinion it was said:

"The sole question presented on appeal is that arising over plaintiff's third cause of action, named in plaintiff's petition, which is as follows:

"'Plaintiff for his cause of action alleges that in the town of Lindsay * * * that the proper officials of said municipality, legally constituted for that purpose, made and filed with the county excise board of said county a financial statement and estimate of the needs of said municipality for general fund purposes for said year, in which it was shown that the total needs for said general fund was $23,832, and showed surplus revenue on hand of $1,210.45, and estimated income of $21,550; making a total of surplus revenue and estimated income of $22,760.45, and leaving only $1,071.55 to be raised by taxation, and the county excise board approved and adopted said estimate and appropriation, and added thereto 10 per cent. of $23,832, which 10 per cent. amounted to $2,383.20, before they made deductions of said surplus revenue and estimated income, and by that method they left a sum to be raised

300

by taxation which required a levy of 4 mills upon all taxable property in said municipality, and they made a tax levy upon all property for the purpose of raising the same.

" 'Plaintiffs allege that said appropriation was incorrectly made in this, to wit: That the surplus revenue and estimated income should have been first deducted from the total requirements before 10 per cent. was added for delinquent taxes, and that only 10 per cent. of the remainder after said deduction should have been so added for delinquent taxes, which would have been $107.15 instead of $2,383.20, and which would have left $1,178.70 to be raised by taxation; that by the method under which said appropriation was made more than 200 per cent. was added for the purpose of protecting against delinquent taxes instead of 10 per cent. as provided by law. and by said method there was actually added for delinquent taxes to the surplus revenue on hand $121.04, and there was added to the estimated income $2,155 * * *'

"The only proposition presented by plaintiff is the construction to be given that portion of section 9699, C. O. S. 1921, which reads as follows:

" 'When the excise board shall have ascertained the total assessed valuation of the property taxed ad valorem in the county and in each municipal subdivision thereof, and shall have computed the total of several items of appropriations for current expense and sinking fund purposes for the county and each municipal subdivision thereof with 10 per cent. (10%) added thereto for delinquent tax, they shall therefrom make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years, together with the amount of the probable income of each from all sources other than ad valorem taxation, provided, that in no event shall the amount of such estimated income exceed the actual collections from such source for the previous fiscal year.'

"As we understand the contention of the plaintiff. it urges that, after the excise board shall have ascertained the total assessed valuation of the property taxed ad valorem in a governmental subdivision, the excise board shall then compute the total items of appropriations necessary for the current expense and sinking fund for such governmental unit; that such board shall thereupon deduct any surplus balance on hand from any previous year or years, together with the amount of the probable income of such subdivision from all sources other than ad valorem taxes; and that when these amounts are deducted the excise board shall then add 10 per cent. thereto for delinquent taxes. In other words, the contest arises over the question as to when the board shall add the 10 per

cent. for delinquent taxes. The defendant insists that under the statute the board should add 10 per cent. before any deduction is made on account of revenue on hand for the previous year or years, together with income from certain sources, other than revenue from ad valorem taxation. The plaintiff points out in a very forceful manner the injustice that may arise by adding 10 per cent. to the estimate of delinquent taxes prior to any permissible deductions to be made therefrom. And we are not unmindful of the fact that cases may occur in which the operation of the statute, of which the plaintiff complains, may become absurd. However, it frequently happens that a rule of law may at times operate in an impractical manner and a detriment to another; yet the courts cannot on that account strike down such established rule, and especially is this true in case of a statute which, standing alone, shows from the language employed therein its plain and manifest intention.

"As we view the statute in controversy, it clearly and adequately directs the excise board when and in what manner it should add 10 per cent. for delinquent taxes. The language of the act is such that it affords no room or opportunity for judicial construction. Its meaning is self-evident. and therefore sufficiently conveys its own meaning and terms, and we do not feel that we would be justified in attempting to read into the statute any other language in order to determine a different result than which is naturally to be deduced therefrom.

"The court, in the case of Hines v. Dalton, 90 Okla. 239, 217 P. 168. construing section 9699, C. O. S. 1921, said:

" 'We think this should make it perfectly plain as to what are the powers and duties of the respective boards and as to when the per cent. as an allowance for delinquent tax should be added.

" 'It is not disputed that this view is correct under the literal meaning of the statute. but it is contended by plaintiffs in error that to give such statute its literal meaning is an absurdity, and counsel cites a number of decisions. among which are Town of Grove v. Haskell. 31 Okla. 77. 116 P. 805'; Ledegar v. Bockoven. 77 Okla. 58, 185 P. 1097; and McGannon v. State, 33 Okla. 145, 124 P. 1063 (Ann. Cas. 1914B. 620) to show that. where an act is susceptible of two constructions. the court will give it the most reasonable one: that, if following the plain language of an act would produce absurd results. and a different construction render it free from such consequences. the court will give such act a construction free from absurd consequences: that, where there is doubt or ambiguity. the court will give an act that interpretation which is most reasonable: that statutes will receive a sensible construction so as to avoid absurd and unjust conse-

quences, etc. While the correctness of the rule as announced in the decisions cited is readily conceded, yet they are of no benefit here, the statute in question here not being reasonably susceptible of two constructions.'

"In the case of Going, County Treasurer, et al. v. Carter Oil Co., 88 Okla. 222, 214 P. 922, the court in its syllabus 2 said:

"'Section 9699, Comp. Stat. 1921, contemplates an appropriation for the current expenses of the county and an appropriation for the aid of common schools; that the various items of appropriation should be totaled and 10 per cent. added for delinquent taxes; that there should be deducted therefrom the surplus revenue of the county on hand at the end of the fiscal year and the estimated income from sources other than ad valorem tax; * * * but the surplus in the common school fund and the estimated income of that fund from sources other than ad valorem tax should not be considered as surplus revenue of the county or estimated income of the county.'

"In the case of Hines v. Dalton, supra, the court, commenting upon the opinion in the case of Going, County Treasurer, et al. v. Carter Oil Co , supra, said:

"'Thereby expressing the view of the court as to the powers and duties of the county excise board, under section 9699, and thus indicating that the 10 per cent. allowance for delinquent taxes should be computed upon and added to the total amount of estimated expense first, and that the surplus balance on hand together with the probable income from other sources be deducted afterward.'

"In the case of Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 P. 969, the court in its syllabus 6 of said case stated:

"'The construction given section 9699, Comp. Stat. 1921, in Hines v. Dalton, 90 Okla. 239, 217 P. 169, relative to the addition of 10 per cent. as allowance for delinquent taxes, is followed.'

"It appears that this court has definitely settled the question as to the manner in which the excise board may follow the directions as provided in section 9699, C. O. S. 1921, relating to the manner of adding 10 per cent. for delinquent taxes, and we think that the former decisions of this court are based upon clear and logical reasons, and we cannot now see any justifiable reason why these opinions should be overturned."

In that opinion the court does not refer to the El Reno-Taylor Case, although denying the essential theory thereof.

It is said that Adjustment Realty Co. v. Muskogee County Excise Board, 141 Okla. 130, 284 P. 27, follows the El Reno-Taylor Case in this regard. However, an examination of same discloses that it follows the rule in the Hines Case, the Oklahoma Pipe Line Company Case and the Myers Case, supra. Therein a tax levy was made and sustained and the addition to the aggregate appropriation for delinquencies was made and upheld. The incorporation in paragraph 7 of the syllabus therein of the rule stated in the El Reno-Taylor Case is dicta. Paragraph 8 of the syllabus announces the rules of law which were actually applied therein.

The case of In re Monsell, 142 Okla. 130, 285 P. 836, is also offered as following the rule of the El Reno-Taylor Case. What we have just said with reference to the Adjustment Realty Co. Case is equally true in the Monsell Case. The rule of the El Reno-Taylor Case which is incorporated in paragraph 1 of the syllabus of the Monsell Case is dicta. The rule as applied in the Monsell Case is correctly stated in paragraph 2 of the syllabus thereof.

Although the rule of the El Reno-Taylor Case is substantially incorporated in paragraph 1 of the syllabus of Protest of Oklahoma Pipe Line Co., supra, the same is dicta and not applicable to the facts and conclusions of the court therein.

The case of St. L.-S. F. Ry. Co. v. Bonaparte, 142 Okla. 177, 286 P. 343, is cited as supporting the rule of the El Reno-Taylor Case. That case does not in any manner deal with the necessity of the addition of a certain percentage for delinquent collections, and is not in point, and the same is likewise true as to Protest of Murray, 140 Okla. 240, 285 P. 80, also cited.

The case of Sinclair Prairie Pipe Line Co. v. Tulsa County Excise Board, 173 Okla. 375, 49 P.2d 114, reaffirms the rule of the El Reno-Taylor Case, although erroneously basing it upon the Bonaparte and Protest of Murray Cases, supra, which do not deal with the necessity or nonnecessity of adding a per cent. for delinquent collections.

The case of Protest of St L.-S. F. Ry. Co., 182 Okla. 522, 78 P.2d 806, appears to reaffirm the rule of the El Reno-Taylor Case.

Many of the above cases show the fallacy of the rule that if there is no tax levy, there is no addition for reserve, but if there is any levy at all, however small, then 10 per cent. of all appropriations is added, thus in practically all such cases the amount added would be more than 10

per cent. of the tax levy, and in many cases the amount added is more than the total amount needed to be raised by taxation. Thus, if there is any levy, however small, the entire appropriation has and must have its margin of safety whether financed by taxation or money from other sources, while if no levy there is no such reserve. However inconsistent, that condition of the law would appear to exist on account of these prior decisions, and in the face of a plain and unambiguous statute, which if followed would result in no such ridiculous condition of confusion, but would result in all cases in providing a margin of safety as to all anticipated income, and would result further in more nearly adequately financing the appropriations in pursuance of the "pay-as-you-go" plan provided by the Constitution.

To construe the statute as plainly written leads to the very logical and wholesome result of permitting total appropriations to be made only to the extent of 10/11 or about 90.9 per cent. of the amount of total anticipated revenue. The use in advance of anticipated revenue is always attended with the danger of undercollection, and its use is justified only where there is reasonable certainty of prompt collection (Sinclair Prairie Pipe Line Co. v. Seminole County Excise Board, 171 Okla. 382, 42 P.2d 501), and the Legislature may and should place proper safeguards and limitations upon its use for financing appropriations, in order that there be no violation of the provision of the Constitution that expenditures shall not be made in excess of the income and revenue provided for the fiscal year. Section 12678, O. S. 1931, by its plain terms was designed to promote that result. This court need only refer to its own opinions in numerous cases to see that in hundreds of municipal subdivisions of the state the anticipated revenues in past years have failed to be ample to retire the warrants and other indebtednesses issued and accrued in anticipation of collections from current tax levies and other anticipated income. The result has been widespread judgments upon warrants, and funding bonds, thus placing an additional burden upon the taxpayer far in excess of that which was intended by the Constitution and statutes, and in violation of the protective provisions thereof True, a great part of such excessive indebtedness has been the result of tax collection failures, but it is entirely probable that the same has been caused by equal, if not greater, undercollections of estimated income from other sources; and such a deplorable state of affairs has been promoted by permitting in many instances appropriations to the full limit of such anticipated revenues in violation of the plain provisions of the statute.

And now since the 1933 amendment to section 9, article 10 of the Constitution, which results in greatly reducing the limits of levy as compared to the limits theretofore permitted, the mischief wrought will be far more widespread than heretofore. The present case, as well as the case of Protest of St. L.-S. F. Ry. Co., 182 Okla. 522, 78 P.2d 806, supra, are but vanguards and examples of what may be expected. Where heretofore the limit of levy was great enough to permit the taxing officials to provide for financing the appropriations with a margin of financial safety for failure in anticipated revenue, now, with the reduced limit of levy, the taxing officials, with due regard to facts, find it difficult to provide the margin of safety even if they so desire. And although the local officials, by subterfuge and artificial methods and without proper relation of facts, might obtain the same results by further reducing their estimate of income from sources other than ad valorem taxation, the important consideration remains that the taxpayer has no means of requiring that to be done, and is left entirely at the pleasure of the local officials in that regard.

Heretofore most municipal subdivisions have had a sufficiently large limitation of levy to permit them to make an ample tax levy, and have therefore been induced and compelled to add the percentage to the appropriations for delinquencies, thus reducing to that extent, at least, expenditures in excess of income and revenue. Even then many of them have failed to realize sufficient funds to meet their expenses and pay their warrants. The limitation of levy in most instances will now be greatly reduced, as is true here. And the result of sustaining the rule of law urged by protestant would be to deny any levy in such cases, and dispense with the marginal addition for financial safety in such cases, and make the financial difficulties more widespread in the future than in the past.

Let us illustrate the resulting condition from facts and figures shown in this record. The first estimate of needs published by the local officials and filed with the excise board showed total estimated needs for the general fund of $3,525,295.88 (this was subsequently withdrawn and changed

in an effort to avoid the application of the rules of law and the result under the facts. It serves, however, to demonstrate the illogical results). The cash surplus as finally determined is $970,669.05. The estimated income from sources other than ad valorem taxation as finally fixed is $2,397,860. The total assessed valuation is $103,179,169 and the limit of levy allocated by the excise board was 2 mills, which is sufficient to raise $206,358.33.

It was the duty of the excise board to make such appropriations in the amount requested, if same could be financed by the income and revenue provided for the fiscal year. In re Tax Levies of City of Woodward, 143 Okla. 204, 288 P. 458. It is readily apparent that the requested appropriations cannot be financed without a tax levy, as the cash surplus and income from sources other than ad valorem do not equal same. If we add thereto the amount produced by the 2-mill levy we find that we have the sum of $3,574,887.39, which is in excess of the appropriations. If we employ the tax levy, however, we must add 10 per cent. to the total appropriations under the Hines and other cases, supra (after deducting the cash surplus, see amendment, chapter 85, S. L. 1931), in which event we discover that it would require the sum of $412,229.50 from tax levy to finance the same, which is in excess of the amount which can be raised by the 2-mill limit. It then becomes the duty of the excise board to reduce the appropriations to come within the income and revenue which can be provided.

It would appear, then, that the figures should be as follows:

| | |
|---|---|
| Total appropriations | $3,338,140.27 |
| Deduct cash surplus | 970 669 06 |
| | $2,367,471.21 |
| Add 10 per cent, for delinquencies | 236,747.12 |
| Total to be financed by tax and other estimated income | $2,604,218.33 |
| Deduct anticipated income from sources other than ad valorem taxation | $2,397,860.00 |
| Balance to be raised by ad valorem taxation | $ 206,358.33 |

—which is the amount which the 2-mill levy will raise.

But an examination of the above figures discloses that the two items of cash surplus and estimated income from sources other than taxes added together are alone more than the appropriations, as above reduced, and under the rule of the El Reno-Taylor Case, as here sought to be applied by the protestant, no tax levy can be made.

It would seem, then, that under such contentions the only thing left to do would be to make the appropriations in the total sum of $3,368,529.06, adding nothing thereto for delinquencies, and the same would then equal the two financing items composed of the cash surplus and estimated income from sources other than taxation; thus denying the city the right to make any tax levy at all. The result would be larger appropriations, no tax levy, no margin of safety, and the appropriations less adequately financed, with much greater danger of the expenditures exceeding the income and revenue, and with the resultant additional burden upon the taxpayers.

The local officials here were under the duty of taking care of the various affairs of the city. They had the constitutional right to make an ad valorem levy within the limit of the millage levy allocated to the city by the excise board under the Constitution. In an effort to avoid being deprived of that constitutional right by the statute and those former conflicting decisions heretofore noticed, these officials undertook to revise their budget and in effect to increase their aggregate appropriations by dividing their current expense items into separate funds. The major part of the total, being called "general fund," was so calculated and listed as to equal the cash surplus plus estimated income from other sources. This part of the appropriations they sought to bring under the rule of the El Reno-Taylor Case, without reserve for margin of safety. The balance of about 6 per cent. of the appropriations was listed as separate "park fund" and "library fund." To this balance they added the 10 per cent. reserve and these latter funds were so calculated that the 110 per cent. thereof equaled the sum that could be raised by ad valorem levy within the limit of levy allocated by the excise board. Thus about 94 per cent. of the current fund appropriation is not protected by the percentage of reserve required by statute, while only about 6 per cent. thereof is so protected. There is no legal authority for such a state of affairs in municipal financing. There is no logic in rules, existing by virtue of confusing opinions, which would require municipal officials to resort to such otherwise purposeless tactics purely for the purpose of arriving at some apparent harmony with those opinions above noticed.

If the law does not require any margin of safety for delinquent collections as to income from sources other than ad valorem taxation, why not arrive at that result di-

rectly instead of resorting to confusing and circuitous methods? The answer appears to be that, doing so, they would more plainly disclose the positive violation of the formula prescribed by the statute 12678, supra.

We conclude that the percentage for reserve or margin of safety provided for in section 12678, O. S. 1931, supra, should be added to every appropriation of municipal funds for municipal purposes, whether it is intended to pay the warrants issued against the appropriation out of money collected from taxes or out of money received from estimated income from other sources. We conclude, as this court has heretofore held in the cited cases, that such is the clear requirement of the statute, and that such statute is not ambiguous or properly susceptible of any other construction, as applied to such municipal appropriations. In so far as contrary, we expressly overrule El Reno Wholesale Grocery Co. v. Taylor, 87 Okla. 140, 209 P. 749; Sinclair Prairie Pipe Line Co. v. Tulsa County Excise Board, 173 Okla. 375, 49 P.2d 114; and Protest of St. L. S. F. Ry. Co., 182 Okla. 522, 78 P.2d 806, and disapprove the contrary dicta in Adjustment Realty Co. v. Muskogee County Excise Board, 141 Okla. 130, 284 P. 27; In re Monsell, 142 Okla. 130, 285 P. 836, and Protest of Oklahoma Pipe Line Co., 147 Okla. 163, 296 P. 405.

We think the facts here clearly disclose the complete lack of harmony between the opinions applying the law as in the El Reno-Taylor Case and the opinions declaring and applying the law as in the Hines Case. We think the fallacy of the attempted distinguishing of the El Reno-Taylor Case in the Hines Case is demonstrated. The two lines of cases are in fact and theory irreconcilable.

We prefer to follow the logical reasoning and conclusions and results in the Hines Case, supra, and other similar cases. We hold that the formula plainly prescribed in section 12678, supra, must be followed in all cases where appropriations are made by the excise board, whether or not a tax levy is made.

Having reached the above conclusion, it would seem to be useless to herein determine the authority of the local officials to separately group various items of the appropriations, making separate levies, etc. In any event, there must be added the percentage for delinquencies which result in reducing appropriations as was done by the Court of Tax Review. That court's action in that regard is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, PHELPS, and CORN, JJ., concur. HURST, J., concurs specially in result. GIBSON, J., dissents. DAVISON, J., absent.

HURST, J. (specially concurring). I concur in the result reached in the majority opinion, but do not agree that the case of El Reno Wholesale Grocery Co. v. Taylor (1922) 87 Okla. 140, 209 P. 749, and the cases following it should be overruled. This line of cases has no application whatever to the facts of this case.

It is my belief that the rule to be applied in computing tax levies must be determined at the time the appropriation is requested, and that rule, once attached, must be followed through to its conclusion. Thus, in the instant case, the requested appropriations totaled $3,563 135.60, while the cash surplus plus estimated income amounted to $3,385,084.87. A tax levy is required to finance the budget. In such case, the rule laid down in Hines v. Dalton (1923) 90 Okla. 239, 217 P. 168, applies, and it is necessary to compute a reserve as set out in the majority opinion. The fact that during such computation the requested appropriation is reduced to a figure that is less than the cash surplus plus estimated receipts is immaterial, because the rule in the Hines Case has already attached and must be followed through to its completion. The rule of the El Reno Case, since the requested appropriation is in excess of the cash on hand and estimated income from sources other than ad valorem taxes, never enters the picture.

GIBSON, J. (dissenting). Oklahoma City made no levy for "current expense fund," but made a levy of .0555 mill for "park fund," and a levy of .6143 mill for "library fund," for the fiscal year beginning July 1, 1937. These two levies were attacked by the protesting taxpayer as unauthorized. The protest on this point should have been sustained. The excise board contends that the protest was insufficient in allegation, but refused to allow a ruling to be made on its demurrer before the Court of Tax Review, so the sufficiency of the allegations is not really presented. Furthermore, there is little that could be alleged except to allege that such levies are illegal and unauthorized.

Prior to the amendment of article 10, section 9 of the Constitution, August 15,

1933, the Legislature had fixed maximum levies for current expense purposes, and also had provided for special funds to be levied for in excess of these maximums. Among these were library and park levies, which had been upheld by this court. Berryman v. Bonaparte, 155 Okla. 165, 11 P.2d 164. But the amendment necessarily abolished all such levies. The amendment provides that the total taxes for all purposes (county, school, city or town) on an ad valorem basis shall not exceed in any taxable year 15 mills on the dollar to be apportioned among the taxing subdivisions by the county excise board until such time as the regular apportionment is otherwise provided by the Legislature.

It is at once apparent that all special levies were abrogated until the Legislature should act. No power was given to the excise board to provide for a special levy of any kind, and the Legislature has not authorized cities to make special levies. It is, therefore, apparent that until the Legislature acts and fixes limitations and provides for special levy, no such thing as special levies exists. In Atchison, T. & S. F. Ry. Co. v. Excise Board of Washington County, 168 Okla. 619 35 P.2d 274, we said that the constitutional amendment "clearly contemplates future legislative action and is clearly indicative of an intent that the prior acts relating to limitations in behalf of the various municipalities should not be controlling of the action of the excise board in its new responsibility."

It is contended that article 11, chapter 33, Session Laws of 1935, is authority for a special levy; but that law does not either in caption or body authorize a special levy. It merely provides for the inclusion of an item for public library purposes in the budget and provides it may equal the amount of a levy between one-half and two mills. Whether the Legislature could in this manner cripple the power given the excise board, we need not inquire, since the act refers to an appropriation to be made as a part of the general scheme and nowhere declares that this is to be a special levy. The appropriation is clearly intended to be a part of the general requirements But here the appropriation is made as a special not a general, item, and is to be financed by a special tax levy. The purpose so to do is made plain by the method used by the city.

Originally all appropriations here were placed under one head by the city. After the excise board fixed the millage avail-

able and as a consequence had returned the budget to the city, the city revised its budget and set up the library and park appropriation funds, and asked for tax levies therefor. The excise board approved a separate levy for each. These levies are, as claimed by the taxpayer, unauthorized and illegal. The protest as to each should have been sustained on that ground, since there is as yet no statutory authority therefor.

Until the Legislature created special levies for parks, library and other municipal purposes, this court repeatedly had held special levies therefor invalid, when, as here, appropriations were attempted to be made therefor outside of the current expense fund. See Acme Milling Co. v. Bonaparte, 125 Okla. 15, 257 P. 284.

There is no difference in principle here. It follows, therefore, that since the levies are illegal the special appropriations to be financed thereby must fail also, since the city had provided no other revenues to finance these appropriations.

What I have said with respect to the illegality of the ad valorem levies to finance the special appropriations for park and library funds is in accord with the view of the majority. How, then, my associates can condemn these special levies as illegal and yet affirm the trial court's judgment denying the protest against these levies is beyond my comprehension.

The other contention made is that the city's appropriations for its current expenses should be reduced to a much greater extent than was made. It is claimed that total reduction of $251,166.92 should be made.

Total appropriations authorized for the current expenses, other than park and library, are $3,376,718.88. Surplus cash on hand amounted to $970,669.06. We hold that this should be used to finance the general fund, and no part is required to be transferred to sinking fund. Deducting this amount from the total, we have a balance of $2,406,049.82 to be financed from sources other than cash on hand. Protestant claims that there was available from sources other than ad valorem taxes an income of $2,409,794.37 from miscellaneous sources and $38,617.04 from net 1936 taxes in process of collection. These two items total $2,448,411.41, an amount greatly in excess of the requirements of $2,406 049.82. It follows that the trial court correctly denied this protest.

The theory of the protestant below and here is stated thus:

"When surplus cash and legally estimated revenues other than tax equal or exceed the total estimates legally appropriated, there exists no need or authority of law for any tax levy and all tax levies imposed in excess of needs are illegal."

The excise board and the city agree to that proposition of law, stating it thus:

"When needs can be met without tax levy no 10 per cent. reserve necessary. The 10 per cent. reserve cannot be added to make levy necessary. * * *

"Since the city, as to its general fund, was able to finance all needs with a cash surplus and estimated income from miscellaneous sources, no tax levy was set up as to this fund, and the cases cited (by protestant) were, therefore, followed."

We have no right to change protestant's theory, especially when it is acquiesced in by the appellee here. He does not claim the right to have appropriations reduced where no tax levy is involved. Under his theory of the law and of the amount of money available for financing the budget without a tax levy, we see no reason for this court to attempt to change a theory accepted by both parties and to indulge in a useless computation of figures.

I do not agree with the construction of the law given in the majority opinion. Nor do I see the necessity for overruling the decision in the case of El Reno Wholesale Grocery Co. v. Taylor, 87 Okla. 140, 209 P. 749, and cases following it. In fact, that portion of the opinion is outside of the issues presented, as I see them. In each case here the parties admit the rule in those cases and none of them ask that the cases be overruled. I do not feel that this court is justified in announcing a rule that is in effect dictum.

I feel, however, that attention should be called to the error in the majority opinion in holding that there is a conflict between the rules announced many years ago in the El Reno Wholesale Grocery Co. Case and the case of Hines v. Dalton. When the needs of a municipal subdivision of the state are less or are equal to but do not exceed the total of the cash on hand and the estimated income from miscellaneous sources, the El Reno Wholesale Grocery Co. rule applies, and the only function the excise board performs is to approve appropriations to finance the needs. However, when the needs exceed the total of cash on hand and miscellaneous revenue and a part

of the needs therefore must be financed by an ad valorem levy, the Hines v. Dalton rule applies. The excise board performs the function of levying a tax and under the statute must add to the appropriations a percentage for delinquent tax.

These two rules have stood for many years without causing confusion to the taxing officials of the counties of the state. The parties to this appeal do not contend there is a conflict between the rules or that they have caused confusion.

If, however, in a case where the rules are involved, this court should find it necessary to change or modify these rules, I am of the opinion that the El Reno Case rule should be permitted to stand unchanged and the Hines v. Dalton rule should be modified so as to require an addition to the appropriations of a reserve for **delinquent tax**, as the statute requires, and not a percentage of the total appropriations.

The El Reno Case and those following it are based upon sound principles of taxation.

Fundamental principles of our system of taxation involving ad valorem taxes are the following: Taxes must be levied for public purposes; such purposes must be distinctly stated in the act, resolution or ordinance levying the tax, and only so much tax as is necessary to meet such purposes can be levied.

"Before the local legislative body of the school district, town, or township here involved can exercise the taxing power under consideration, they must comply with Const. art. 10, sec. 19, and the respective sections of the statute, supra, and state directly the purpose for which the tax was levied by an estimate of their respective expenses. * * *" St. Louis & S. F. R. Co. v. Tate, 35 Okla. 563, 569, 130 P. 941, 943.

"It is equally clear that a tax levy in excess of an amount necessary to produce the funds that are required is illegal and void." Grubb v. Smiley, 142 Okla. 19, 24, 285 P. 38, 43.

The case of Hines v. Dalton referred to did not discuss these fundamental principles, and the result of that case was to permit, for example, the addition of 10 per cent. to the amount of cash on hand, and thus permit the levy of a tax to insure the collection of cash already in the treasury. I am of the opinion that such result was never contemplated by the Legislature, and that the conclusion allowed the collection of a tax for no purpose. The case of Hines v. Dalton, as interpreted by the court here,

would require "literally" the addition of 10 per cent. to an appropriation (before 1933) even if the municipality had cash on hand sufficient to meet every item thereof. The El Reno Case and kindred cases, recognizing the absurdity and illegality of such procedure, laid down the salutary rule that unless a tax was needed no necessity for reserve need be made.

The statute under consideration here (ch. 85, S. L. 1933, 68 Okla. St. Ann. sec. 290) does not require what the court in the majority opinion says must be done. The statute says that after deducting the cash on hand the excise board shall add a **reserve for delinquent tax**, the amount of which shall be determined by the said board after taking into consideration the amount of uncollected taxes for the previous year immediately preceding the next preceding taxable year and the percentage of collections from sources other than ad valorem taxes for the two preceding taxable years; provided, that the reserve so added shall not exceed 20 per cent., or be less than 10 per cent.; provided, further, the amount of the reserve shall not be subject to review. There is nothing in that statute which compels the excise board to add 10 per cent. of the appropriations to the appropriations. But the mandate is to add a reserve for **delinquent taxes.**

We have held that the city has a discretion in determining what will be received from sources other than ad valorem taxes, and that this discretion cannot be controlled by the court except that it cannot estimate more than was received from the same sources the previous year.

In the case of Breeding v. Excise Board of Oklahoma County, 180 Okla. 379, 69 P.2d 638, we specifically held that neither the excise board nor the Court of Tax Review could substitute its judgment for the judgment of the municipal board. Adding 10 to 20 per cent. to the appropriations to be financed by estimated income is equivalent to reducing the estimate therefor, and certainly is an arbitrary substitution of the excise board's judgment for that of the council.

Furthermore, the addition to the amount required by the statute is not for delinquent items of estimated income from miscellaneous sources, but is for delinquent tax.

Here the city received $2,583,935.73 from sources other than ad valorem taxes for the previous year. But in the exercise of its discretion, and, we must assume, after examining the nature of such income, it reduced its estimate to approximately $2,-410,000. This was done by reducing certain items, such as income from the water department and others. Whether the city estimated that other items would bring an increase, we do not know, because it could not estimate more than was received the previous year. We do know, however, that it received a surplus of several hundred dollars in such receipts the previous year. The point is that the city, in the exercise of its judgment and discretion, based upon its experience, did adjust its total estimate downward to insure the collection of this income. This court would now say to the city: "Your estimate is still 10 per cent. too high. After you have reduced it in your sound judgment to the point where the receipt is assured, and no doubt thereby have allowed a margin for reserve, you must now abandon your discretion and arbitrarily reduce this estimate again." Before the excise board would be authorized to change this estimate it would be compelled to find from the experience of the past two years some justification therefor. There is no evidence to support such a conclusion.

One of the reasons allowing a margin between 10 per cent. and 20 per cent. to be added on to the amount receivable from taxes was to protect the estimate too. In other words, if the excise board decides that 10 per cent. of the tax levy would not protect the appropriations, it may add thereto up to 20 per cent. of the tax levy. I cannot conceive, however, that the Legislature intended to give the excise board the right to add 20 per cent. to that part of the estimate which can be financed by miscellaneous income, after the city officials have used their sound discretion and have reduced that estimated item of income to a figure far below the amount received the previous year. The effect of such action would be to say to the city: "You have overestimated your income one-sixth." There is nothing in the law to compel such action. Furthermore, if the statute be given such construction, it will permit the levy of a tax for no purpose and where no necessity exists. It would be contrary to fundamental taxing principles to follow it

I, therefore, respectfully dissent.